IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTWAN POTTS, Plaintiff, and NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, SMART-TD GO721 Defendant. | Case No. 1:25-cv-6156 Jury Trial Requested |

### EMPLOYMENT DISCRIMINATION COMPLAINT

Now comes Plaintiff ANTWAN POTTS (hereinafter "Mr. Potts" or "Plaintiff"), through his attorney, Glori C. Bond, of The Bond Legal Group, LLC and in complaining of the Defendant Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra (hereinafter, "Metra" or "Defendant") states as follows:

### NATURE OF THE ACTION

1. This lawsuit arises from an employment discrimination action. Mr. Potts is a 48-year-old African American man who worked for Metra for almost 20 years. Mr. Potts was employed by Metra from December 01, 2008, until December 04, 2024, until his employment was terminated after almost three years of continued discrimination, harassment, and retaliation. Metra has systemically created a discriminatory and retaliatory work environment against African Americans. Metra's discriminatory and retaliatory practices are steeped deep within Metra's legal department, police department, as well as its train conductors and engineers. Despite Mr. Potts' many years of service, where he has occupied

1

several positions, including being the local union chairman, Metra subjected Mr. Potts to unlawful discrimination as an African American male. In addition, to its discriminatory behaviors, Metra has also retaliated against Mr. Potts after he complained about his unlawful treatment, the unlawful treatment of other similarly situated Metra employees, as well as Metra's violations of Federal transit laws, and OSHA. As a result of Metra's unlawful conduct, Mr. Potts has suffered reputational harm, irreparable harm to his career, as well as work related induced stress and harm to his mental health. Mr. Potts now seeks redress for harassment, retaliation, mistreatment, discrimination and unlawful termination.

## PARTIES

2. Plaintiff Antwan Potts worked for Metra from December 01, 2008, to December 04, 2024, before his unlawful termination.

3. Metra is a public corporation and Transportation Agency created under the Regional Transportation Authority Act, 70 ILCS 36.15/1.01 et. seq. Metra is one of the largest commuter rail systems in North America, serving Cook, DuPage, Will, Lake, Kane, and McHenry counties in Northeastern Illinois. Metra is the rail system serving the six-county Chicago area. Metra provides service to and from downtown Chicago with 243 stations over 11 routes totaling nearly 500 route miles. Metra remains one of the largest and most complex rail systems in North America, with a service area encompassing more than 3,700 square miles. [1]

---

[1] https://metra.com/about-metra

**JURISDICTION AND VENUE**

4. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964 as codified 42 U.S.C. §§2000e to 2000e-17[2], 740 ILCS § 174 *et. seq.*, and common law; and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 & 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Venue is proper in this judicial district because the acts of complained of occurred in this district and the Defendants have caused harm to the Plaintiff in this District.

**FACTUAL ALLEGATIONS**

6. On December 01, 2008, Mr. Potts was hired by Metra to work as an Assistant Conductor Trainee. Mr. Potts served in the position of Assistant Conductor from February 2009 to March 2010. In March 2010, Mr. Potts was promoted to Conductor and served in this role until his termination on December 04, 2024.

7. While employed by Metra Mr. Potts held the following union positions: 1) union trustee (2014-2016), 2) vice local chairman (2015) and 3) local chairman (2016-2019). From 2019-2022, Mr. Potts did not serve in the union chairman position but still used his position to advocate for change.

8. In the four years following 2019, he pressed the executive leadership of Metra in a non-union leadership position to effectuate change and negotiate agreements. One of Metra's top executives told Mr. Potts that in order to establish permanent agreements he would have to have union leaders and members sign off.

---

[2] Plaintiff has filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), which was simultaneously filled with the Illinois Department of Human Rights pursuant to the Collective Bargaining Agreement. Plaintiff intends to amend this Complaint to include claims of Title I of the Americans with Disabilities Act ("ADA"), and the Illinois Human Rights Act after he has exhausted his administrative remedies.

9. On or about June 2020, Mr. Potts raised concerns to Metra leadership and through his union about the pay disparities and inequities among the Metra Electric District. Metra Electric District (hereinafter "MED") is a primarily black district and its ridership services primarily black areas. 90% of MED's conductors are black and its ridership reflects this as well. The agreement for MED is the same as the rest of the districts but essentially MED conductors essentially work their 6th day for free, while other districts receive payment for their 6th day of work. (Exhibit A). Metra's labor relations director did not respond to this grievance until over a year later on August 23, 2021.

10. Mr. Potts raised concerns about the working conditions during Covid specifically on the Metra Electric Districts. Metra employees were threatened with one man train crews and threatened with furloughs. They were exposed to unsafe working conditions and were not afforded the necessary equipment. The train conductors were not provided with proper personal protection equipment and other essential safeguards.

11. During this time this was the start of the Black Lives Matter movement (hereinafter, the "BLM" movement). This movement prompted a new level of courage to speak up against the injustices being faced on the railway. When Mr. Potts first started voicing his grievances, he was met with immediate opposition and was told that nothing including the BLM movant was going to change how things were done.

12. From 2020 until 2024 Mr. Potts was subjected to an abuse of power from Metra's leadership, adverse employment actions as result of his involvement in protected activities and was discriminated against based on his race and disability[3].

---

[3] *Id*.

13. Mr. Potts and others who spoke up were threatened with disciplinary action and potential suspensions.

14. In 2022 Mr. Potts ran for the top position in his union district and regained control. Once Mr. Potts was back in position, Metra leadership banned Mr. Potts from attending meetings with no cause. Mr. Potts was allowed to attend only the first two meetings.

### COUNT I-TITLE VII (WRONGFUL TERMINATION-Retaliatory Discharge)

15. The Plaintiff realleges Paragraphs 1-14 and incorporates them by reference as fully stated herein.

16. A protected class under Title VII of the Civil Rights Act of 1964 includes individuals who are discriminated against based on race, color, religion, sex, or national origin.

17. Title VII explicitly prohibits employment discrimination on these grounds, ensuring that individuals within these categories are protected from adverse employment actions such as hiring, firing, and other terms and conditions of employment.

18. It shall be unlawful employment practice for an employer to discriminate against any of his employees because he has made a charge, testified, assisted, or participated in any manner in an investigation or proceeding.

19. Metra is subject to Title VII because Mr. Potts qualifies as a protected class.

20. Mr. Potts is an African American male who was employed by Metra from 2008 to 2024. Mr. Potts was employed by Metra for 16 years.

21. During his tenure at Metra Mr. Potts served as a conductor as well as the local union chairman.

22. From 2020 until his unlawful discharge Mr. Potts has been a vocal advocate against wage discrimination and disparate treatment among the MED, more specifically, the black MED conductors.

23. On July 06, 2021, a written grievance was filed with Metra and its leadership to reflect the unsafe working conditions as threats of job loss, disciplinary actions and unsafe working conditions. (Exhibit B).

24. On or about August 9th or 10th, 2021, Mr. Potts filed a claim with the United States Department of Labor Occupational Safety and Health Administration (hereinafter, "OSHA") outlining Metra's unsafe working conditions.

25. Mr. Potts was a conductor on a three-person train crew. The train was scheduled to run between Blue Island and Millenium station with the final run to terminate at the Blue Island/Vermont street terminal.

26. Several trains were rerouted due to an earlier train derailment of Metra's equipment at another location (West Pullman).

27. Mr. Potts directed the engineer to line up the switch, and the engineer proceeded to move the train past the switch until the train came to an abrupt stop and the pantographs were caught in the wires. Mr. Potts stated they were never properly trained on the matter.

28. After he reported the incident to OSHA[4], Mr. Potts was disciplined regarding the incident and received a 30-day suspension, and he appealed.

29. After the OSHA complaint was filed which included the above infraction along with another OSHA violation, Metra sent correspondence to the Illinois OSHA South Area

---

[4] Mr. Potts' OSHA complaint was dismissed not because it lacked merit, but due to his counsel at the time egregiously and repeatedly missing deadlines set by the administrative judge. Mr. Potts retained new counsel, but not before the previous counsel caused the case to be dismissed due to missed deadlines and not filing timely extensions.

Office stating that it was taking corrective action to enact signs for track #4 that states, "NO Overhead Wire" as a visual reminder to prevent future incidents from occurring. (Exhibit C).

30. On June 16, 2022, Mr. Potts filed a charge of discrimination against Metra with the Equal Employment Opportunity Commission (hereinafter, the "EEOC"), cross-filed with the Illinois Department of Human Rights (hereinafter, the "IHDR"). In this cross-filed complaint with the EEOC and IHDR Mr. Potts alleged that Metra violated federal law by committing 1) wage discrimination on the basis of race, 2) harassment on the basis of race and 3) retaliation for engaging in protected activity.

31. On June 16, 2022, after repeated attempts as the local union chairman to organize MED conductor and bring awareness to the pay disparities and inequalities to Metra leadership Mr. Potts filed a charge of discrimination against Metra (hereinafter the "Charge").

32. In July 2022, Edward Waugh as the Sheet, Metal, Air, Rail, Transportation Division of the Union (Hereinafter, "SMART"), issued a Notice of Practice Abandonment and filed a grievance as it pertained to the "racial steering" within Metra's hiring practices. This racial steering steered African Americans to the MED which is the lowest paying district. (Exhibit D).

33. After Mr. Potts filed the Charge against Metra adverse employment actions and retaliatory measures by way of disciplinary charges, harassment, threats and a hostile work environment.

34. After filing the Charge with the EEOC Mr. Potts became the subject of an OEIG investigation for PPP fraud.

7

35. The OEIG presented Metra with an initial list of people suspected of fraud, and Metra in response to Mr. Potts activities, submitted a different list that contained the names of individuals, including Mr. Potts, that were causing trouble for Metra.

36. On August 16, 2024, the IHDR entered a finding of substantial evidence with respect to wage discrimination and requested a further investigation.

37. On November 19, 2024, the Director, Suburban Operations Electric District, received a report from the Office of Executive Inspector General (OEIG) stating that Mr. Potts obtained Federal Paycheck Protection Program (PPP) loans based on falsified and/or fraudulent information.

38. On November 25, 2024, Mr. Potts received a letter stating that he was being removed from service pending a formal investigation with respect to the violation of Rules Nos. 1.6 (4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, effective April 1, 2020. (Exhibit E).

39. There is a causal link between Mr. Potts protected activities and Metra's disciplinary and adverse actions against Mr. Potts.

40. As a result of Mr. Potts engaging in protected activities which includes filing the Charge, Mr. Potts was terminated on December 04, 2024.

41. Mr. Potts post-termination hearing was held on April 01, 2025.

42. Mr. Potts was not provided with the investigation report prior to the hearing and was provided with the investigation report during the hearing.

43. When Mr. Potts requested additional time for him and his union representative to review the over 200 pages provided as a result of the investigation, he was told he had an hour to review the documentation.

44. Mr. Potts was not provided with proper notice nor was he provided with a reasonable amount of time to prepare a defense.

45. Mr. Potts was not provided with the opportunity to cross-examine witnesses or present his own witnesses because he was not provided with ample time to prepare witnesses.

46. Metra violated Mr. Potts' civil rights by inflicting targeted and unjust disciplinary actions and investigations against him.

47. There are several other incidents steeped in retaliation, intimidation and harassment. This complaint is not meant to be exhaustive of the many attacks levied against Mr. Potts.

48. As a result of Metra's actions Mr. Potts suffered damage to his reputation and career, he suffered emotional distress and anxiety, as well as loss wages.

49. As a result of Metra's actions Mr. Potts is entitled to all legal and equitable remedies available to him.

**COUNT II- TITLE VII-WAGE DISCRIMINATION-SENIORITY SYSTEMS**

50. The Plaintiff realleges Paragraphs 1-49 and incorporates them by reference as fully stated herein.

51. Metra perpetuated an intent to discriminate against Mr. Potts and other similarly situated persons when it implemented its seniority systems on the basis of race.

52. Metra's seniority units are in the same or separate bargaining units, and the structure is irrational and does not conform to industry practice.

53. The genesis of its seniority system was discriminatory from its genesis as evidenced by "racial steering". (Exhibit D).

54. Metra's Seniority Systems often have adverse impact on persons of color, more specifically, the African Americans that are on the Metra Electric District Line.

55. Metra's Seniority System created adverse impact on the African American train conductors that is not justified by a business necessity.

9

56. As a result, Mr. Potts suffered career harm and damage as a proximate and direct result of Metra's discriminatory seniority system.

57. As a result of Metra's actions Mr. Potts is entitled to all legal and equitable remedies available to him.

## COUNT III-VIOLATION OF DUE PROCESS UNDER THE COLLECTIVE BARGAINING AGREEMENT

58. The Plaintiff realleges Paragraphs 1-57 and incorporates them by reference as fully stated herein.

59. Pursuant to the CBA investigations to be held within ten (10) days of the date of the notice apprising the employee of the specific charges against him.

60. On more than one occasion Mr. Potts received discipline for infractions that were beyond the temporal limits outlined in the CBA.

61. Under the CBA, if the notice is not mailed within 10 days it is not considered proper notice. On more than one occasion Mr. Potts received notice beyond the 10-day window and was denied proper notice under the CBA.

62. On November 25, 2024, Mr. Potts received notice that he was removed from service and that he was not allowed to be on Metra's property pending the results of a formal investigation. (Exhibit E).

63. Under Rule 38 of the Collective Bargaining Agreement (hereinafter the "CBA"), Mr. Potts should not have been held out of service prior to a fair and impartial investigation. (Exhibit F).

64. Also under Rule 38, an employee will not be disciplined or dismissed without being afforded a fair and impartial investigation and have the ability to have a duly accredited representative and the ability to interrogate all witnesses. *Id.*

65. Mr. Potts had a cognizable property interest in his employment.

66. Mr. Potts was deprived of that property interest as a result of Metra's actions.

67. On December 04, 2024, Mr. Potts was terminated from his position with Metra.

68. Mr. Potts appealed his December 04, 2024, termination.

69. On April 01, 2025, Mr. Potts post-termination hearing was held via teleconference.

70. On April 01, 2025, Mr. Potts received the results of his investigation during his hearing and not prior to the hearing.

71. Mr. Potts and his union representative were not provided with ample time to review over 200 pages of information and documentation.

72. Mr. Potts and his representative were only given one hour to review hundreds of pages of information.

73. Mr. Potts and his representative was not given proper notice and were not provided with ample opportunity to review the information, interrogate witnesses regarding the investigation findings and or get witnesses to combat the investigation findings.

74. Mr. Potts was not provided with a timely notice of the charges prior to his hearing.

75. Mr. Potts was not given proper notice to prepare a proper defense.

76. Mr. Potts was not provided with a full and fair hearing.

77. Mr. Potts was not provided with the opportunity to present evidence that would challenge the evidence presented.

78. Mr. Potts was not provided with the opportunity to confront and cross-examine witnesses.

79. Mr. Potts was not provided with an impartial and fair tribunal that oversaw his proceedings.

80. Metra's actions denied Mr. Potts due process under the CBA.

81. As a result of Metra denying him due process, Mr. Potts suffered reputational and career harm.

82. Metra's actions were the proximate and direct cause of the denial and violation of Mr. Potts due process rights.

83. As a result of Metra's actions Mr. Potts is entitled to all legal and equitable remedies available to him.

**COUNT VI-ILLINOIS WHITSLEBLOWER ACT (740 ILCS § 174 et. Seq)**

84. The Plaintiff realleges Paragraphs 1-83 and incorporates them by reference as fully stated herein.

85. The Illinois Whistleblower Act prohibits employers from threatening or retaliating against any employee "for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation." 740 ILCS 174/20; 740 ILCS 174/20.2.

86. Metra was an "employer" subject to the act because it is a "unit of local government" or an agency thereof. 740 ILCS 174/5.

87. Mr. Potts was an "employee" under the Act because he was employed by Metra.

88. Metra wrongfully terminated Mr. Potts as a result of his union activities as well as other protected activities such as Mr. Potts filing the Charge with the EEOC, a complaint with OSHA, and not going along with Metra's discriminatory practices and disparate treatment of conductors of color.

89. As a result of Metra's willful and wanton conduct, Mr. Potts suffered lost wages, emotional distress, and reputational damage.

90. By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies available for violations of the Act. 740 ILCS 174/30.

**COUNT V-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

91. The Plaintiff realleges Paragraphs 1-90 and incorporates them by reference as fully stated herein.

92. The Metra's conduct was intentional or in reckless disregard of Mr. Potts' physical and emotional wellbeing.

93. Metra's harassment, threats, and intimidation was so extreme and outrageous it caused Mr. Potts to leave his job pursuant to the Family and Medical Leave Act (hereinafter, "FMLA").

94. Metra's conduct and the conduct of its employees was the direct and proximate result of Mr. Potts' ongoing mental distress and anxiety. Mr. Potts received threats for engaging in protected activities and his home and property were destroyed and vandalized as a result of his participation in protected activities.

95. Mr. Potts' emotional distress was so severe that no reasonable person could be expected to endure it.

96. Metra's actions were a culmination of years of retaliatory activities, threats, and sustained harassment that served no justifiable purpose.

97. Mr. Potts faithfully served his country in the Golf War and suffered from Post Traumatic Stress Disorder (PTSD).

98. Prior to the investigation Mr. Potts was on a treatment plan, and would take intermittent FMLA to address his PTSD, in addition to using FMLA to care for his father and take care of other family issues.

99. Metra's treatment of Mr. Potts inflamed his PTSD by subjecting him to false allegations, retaliatory investigations, and disciplinary actions.

100. As a result of Metra's extreme and outrageous conduct, Mr. Potts has had to seek help from mental health professionals, his anxiety has escalated and has suffered a mental break that is a direct and proximate result of Metra's actions.

101. Due to Metra's actions Mr. Potts has suffered mental and emotional harm. Mr. Potts is entitled to all legal and equitable remedies available to him.

**COUNT VI- BREACH OF DUTY OF FAIR REPRESENTATION**

102. The Plaintiff realleges Paragraphs 1-101 and incorporates them by reference as fully stated herein.

103. Mr. Potts was a dues paying member of the SMART division at the time of his wrongful termination on December 04, 2024.

104. Mr. Potts served as the local chairman of the SMART division during his employment at Metra.

105. Mr. Potts filed grievances with the union were meritorious.

106. The union responses to Mr. Potts grievances, questions and concerns were arbitrary, discriminatory and in bad faith.

107. Because Mr. Potts did not have the full support of the union he suffered from reputational and career harm.

108. As a result of the union not standing up to Metra Mr. Potts was subjected to continued harassment, discrimination and retaliation.

109. Mr. Potts have exhausted the remedies available to him.

110. Due to the union's actions Mr. Potts has suffered mental and emotional harm. Mr. Potts is entitled to all legal and equitable remedies available to him.

**WHEREFORE**, Plaintiff respectfully requests that this Court finds against Defendant as follows:

a. Declare that Metra's acts, conduct, policies, and practices are unlawful and violates Title VII of the Civil Rights of 1964 as it pertains to wage discrimination, seniority systems and retaliatory discharge, Due Process, the Illinois Whistleblower Act, and common law.

b. Declare that the Plaintiff suffered from a Breach of Duty of Fair Representation.

c. Declare that Metra's actions caused and subjected the Plaintiff Intentional Infliction of Emotional Distress;

d. Award Plaintiff the value of all compensation and benefits lost, in addition to future losses as a result of the Defendant's unlawful Conduct:

e. Award Plaintiff compensatory and punitive damages;

f. Award Plaintiff prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law; and

g. Award Plaintiff such other make-whole equitable, injunctive, and legal relief as this Court deems just and proper to end the discrimination and retaliation and fairly compensate Plaintiff.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Under Federal Rule of Civil Procedure 11,by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: June 2, 2025

Respectfully submitted,

By: */s/ Glori C. Bond*
Glori C. Bond

Glori C. Bond, Esq.
(gbond@thebondlegalgroup.com)
(ARDC #6329463)
THE BOND LEGAL GROUP LLC
P.O. Box 39
Matteson, Illinois 60443
(708)412-1536
*Attorney for the Plaintiff*