IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTWAN POTTS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORTHEAST ILLINOIS REGIONAL )<br>COMMUTER, RAILROAD )<br>CORPORATION, et al. )<br>)<br>Defendants. ) | Case No.:1:25-cv-06156<br><br>Hon. Elaine E. Bucklo |

## DEFENDANT SMART-TD GO-721'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant, the International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division General Committee of Adjustment GO-721 ("SMART-TD GO-721" or "the Union"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits the following in support of its Motion to Dismiss Plaintiff Antwan Potts' ("Plaintiff") First Amended Complaint. (Docket Entry ("D.E.") 33).

## INTRODUCTION

On June 2, 2025, Plaintiff filed his original complaint alleging, in part, that his union, SMART-TD GO-721, breached the duty of fair representation in representing him regarding grievances he had against his employer, the Northeast Illinois Regional Commuter Railroad ("Metra"). (D.E. 1). Faced with motions to dismiss from both the Union and Metra, Plaintiff filed his First Amended Complaint ("Complaint") on November 19, 2025, wherein he now alleges for

the first time that the Union[1] discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), abandoning his prior claims.[2]

As explained below, Plaintiff's allegations fall far short of stating a viable Title VII claim against SMART-TD GO-721. Plaintiff attempts to recast his termination by Metra, which was based on an Office of Executive Inspector General ("OEIG") investigation finding that he fraudulently obtained Paycheck Protection Program ("PPP") loans, as part of a sweeping narrative of discrimination and retaliation. He then attempts to pull the Union into that narrative with vague and conclusory allegations tied to the OEIG investigation and his subsequent dismissal. Even accepting his allegations as true at this stage, Plaintiff pleads only that the Union declined to appeal his termination, an allegation that, without more, does not support a claim for discrimination or retaliation under Title VII.

As an initial matter, Plaintiff has failed to exhaust his administrative remedies with respect to the Union. Plaintiff has not filed any charge with the EEOC against the Union and this failure is fatal to his case. Further, much of the conduct Plaintiff alleges in his Complaint

---

[1] Plaintiff asserts that "SMART has approximately 230,000 members... [and] represents members throughout construction, rail and transportation, manufacturing and power plant industries." (D.E. 33 at ¶ 4, n.2). SMART-TD GO-721 is a general committee of adjustment representing employees on Metra, and is a separate and distinct legal entity. *See* BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div., 973 F.3d 326, 332 n.3 (5th Cir. 2020) (noting SMART-TD's three-tiered structure); *see also* Gen. Comm. of Adjustment, GO-386 v. Burlington N. & Santa Fe Ry. Co., 295 F.3d 1337, 1339 (D.C. Cir. 2002) (noting GCAs "operate above the local level," are "authorized by the union constitution to deal with grievances," and "have authority to make and interpret agreements with representatives of transportation companies covering rates of pay, rules, or working conditions."). As no allegations are made that SMART's international body was involved in the allegations contained in the Complaint, all arguments are addressed as brought solely against SMART-TD GO-721.
[2] Plaintiff also brought these counts as well as claims for wage discrimination and intentional infliction of emotional distress against Metra.

occurred more than 300 days ago, rendering any claims based on said conduct ripe for dismissal with prejudice.

Even if Plaintiff had exhausted his remedies, his discrimination claims still fail. He does not allege facts showing that the Union acted with any purpose to facilitate discrimination, a necessary component of a Title VII claim. Rather, Plaintiff's factual allegations demonstrate that the Union took Plaintiff's prior complaints of discriminatory treatment by Metra of its African American employees seriously, grieving the matter back in 2022. While Plaintiff attempts to connect the Union's alleged refusal to appeal his termination nearly three years later to some form of discrimination, he fails to plead any facts supporting even an inference of such. Instead, his own allegations show that Metra dismissed him for fraudulently obtaining PPP loans, and he pleads no supporting facts that Union's alleged subsequent decision not to appeal that dismissal was motivated by race.

Finally, Plaintiff's retaliation claim fares no better, as he does not demonstrate what protected conduct he engaged in with respect to the Union. Rather, he points to his complaints regarding Metra's treatment of supervisors who were smoking in impermissible areas in comparison to its treatment of bargaining unit employees. He then claims the Union retaliated against him by allegedly refusing to appeal his termination as a result. Such is insufficient to plead a valid cause of action for retaliation in violation of Title VII. Further, the temporal proximity of his reporting the matter and the Union's alleged retaliation fail to support an inference of retaliation, especially in light of the underlying facts regarding plaintiff's dismissal from employment.

Accordingly, for the reasons stated below, Plaintiff's Complaint should be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim.

# FACTUAL BACKGROUND[3]

Taking the allegations contained in the Complaint as true, Plaintiff was employed by Metra from December 1, 2008, up until his termination from employment on December 4, 2024, first as an assistant conductor and eventually as a conductor. (D.E. 33 at ¶ 7). He also held various Union positions during that time. (Id. at ¶ 8).

As an employee of Metra and a Union officer, Plaintiff raised a myriad of concerns with Metra leadership, including alleged pay disparities between Metra Electric District ("MED") employees, who are primarily African American, compared to other Metra employees, and substandard working conditions during the Covid-19 pandemic. (D.E. 33 at ¶¶ 10-11). On June 16, 2022, Plaintiff filed a charge of discrimination against Metra with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights ("IHDR"), alleging wage discrimination, harassment, and retaliation.[4] (D.E. 33 at ¶ 12). SMART-TD GO-721 General Chairperson Edward Waugh ("GC Waugh") supported Plaintiff's efforts by filing a grievance with Metra alleging that there was racial steering in its hiring practices, which resulted in African American employees being disproportionately "steered" to the lower-paid MED. (D.E. 33 at ¶ 14).

On April 7, 2024, Plaintiff complained to Metra leadership and Union representatives about alleged disparities in discipline procedures regarding black employees compared to their

---

[3] Pursuant to Rule 12(b)(6), Fed.R.Civ.P. 12(b)(6), and solely for purposes of this Motion, the Union Defendants accept the "facts" contained in Plaintiff's Amended Complaint as true. However, Plaintiff is not afforded the same presumption with respect to his assumptions and legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 668-69 (2009); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[4] Plaintiff claims that on August 16, 2024, the IHDR entered a finding of substantial evidence with respect to the charge he filed pertaining to wage discrimination, and requested further investigation. (D.E. 33 at ¶ 31).

4

non-African American counterparts. (D.E. 33 at ¶ 29). One month later, on May 7, 2024, Plaintiff was informed that he was under investigation by the OEIG and that the OEIG had contacted Metra officials. (D.E. 33 at ¶ 30). This federal investigation related to Plaintiff's alleged misconduct concerning PPP loans obtained through fraudulent means. (D.E. 33 at ¶ 36).

On May 16, 2024, Plaintiff contacted GC Waugh to inform him that Metra officials were violating Metra's smoking regulations. (D.E. 33 at ¶ 62). GC Waugh responded that he would address Plaintiff's complaint immediately to ensure the violations did not continue. (D.E. 33 at ¶ 63; D.E. 33-6 at pg. 2). Plaintiff replied by asserting there were disparities between how GC Waugh and Metra handled disciplinary matters involving rank-and-file employees compared to Metra officials. (D.E. 33 at ¶¶ 63-64).

On November 25, 2024, Metra removed Plaintiff from service pending a formal investigation into alleged violations of the General Code of Operating Rules. (D.E. 33 at ¶ 33). Specifically, Plaintiff was charged with dishonesty and behavior that could cause criticism to Metra based on the OEIG report dated November 19, 2024, concluding that he "obtained… PPP loans based on falsified and/or fraudulent information." (D.E. 33-3 at pg. 1). Plaintiff was subsequently terminated on December 4, 2024, after Metra allegedly denied him a pre-termination hearing. (D.E. 33 at ¶¶ 34, 41). Plaintiff received a post-termination hearing on April 1, 2025, at which he was represented by Local Chairperson Milton Driver III ("LC Driver"). (D.E. 33 at ¶¶ 42, 49). Plaintiff and LC Driver were not provided a copy of the investigation report until the hearing itself and were only given an hour to review more than 300 pages of information. (D.E. 33 at ¶ 44). Plaintiff and LC Driver were not permitted to cross-examine witnesses nor present witnesses on Plaintiff's behalf. (D.E. 33 at ¶¶ 45-46).

Plaintiff claims that he requested that the Union appeal his termination, and it refused to do so. (D.E. 33 at ¶¶ 47, 52, 73-74). Plaintiff further contends that the Union and Metra treated non-African American employees more favorably in connection with OEIG investigations and other disciplinary proceedings. (D.E. 33 at ¶ 38). According to Plaintiff, his disciplinary actions and subsequent termination were directly caused by his advocacy against what he viewed as unfair treatment and disproportionate discipline against African American employees. (D.E. 33 at ¶¶ 54, 66).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure ("FRCP") 8(a)(1)-(3) establishes the requirements a plaintiff must meet in order to plead a valid cause of action. FRCP 12(b)(6) allows for the dismissal of claims when the plaintiff fails "to state a claim for which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 568 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Put another way, the "complaint must include facts showing a plausible – not merely 'conceivable' – entitlement to relief." *Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464, 469 (7th Cir. 2020) (*citing Iqbal,* 556 U.S. at 679)).

A complaint containing only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" is insufficient to survive a FRCP 12(b)(6) motion. *Iqbal,* 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly,* 550 U.S. at 557). "Although notice pleading under Rule 8 is a more

permissible standard than the code pleading that preceded it, 'it does not unlock the doors to discovery for a plaintiff armed with nothing more than conclusory allegations.'" *Lugo v. Int'l Bhd. of Electrical Workers Local 134*, 175 F.Supp.3d 1026, 1032 (N.D. Ill. 2016) (*quoting Iqbal*, 556 U.S. at 678-69). "A court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, but conclusory allegations merely restating the elements of a cause of action do not receive this presumption: 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.*

Further, a court is not required to accept as true a factual allegation contradicted by a properly considered document attached to the complaint as an exhibit. *Bell v. Lane,* 657 F.Supp. 815, 817 (N.D.Ill.1987) ("[w]here exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations" in denying a petition to file in forma pauperis based on information in the exhibits that contradicted allegations made in the petition). "In fact, 'a plaintiff may plead himself out of court by attaching documents to the complaint that indicates that he or she is not entitled to judgment.'" *Northern Indiana Gun & Outdoors Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998) (*quoting In re Wade,* 969 F.2d 241, 249 (7th Cir. 1992))*.*

## **ARGUMENT**

As set forth more fully below, Plaintiff's claims against the Union fail for several reasons. First, he did not exhaust his administrative remedies, as is required under Title VII. Further, he fails to state a discrimination claim because he is unable to plausibly allege that the Union discriminated against him on the basis of any protected characteristic. Finally, Plaintiff cannot state a claim for retaliation, as he fails to demonstrate any protected activity he engaged in with

respect to the Union within the meaning of Title VII. Accordingly, his Complaint against the Union should be dismissed.

### A. Plaintiff Failed to Exhaust His Administrative Remedies

"Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right-to-sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Although "the receipt of a right-to-sue letter is not a jurisdictional prerequisite to bringing a Title VII suit," a "complaint may be deficient and subject to dismissal if the plaintiff lacks [one]." *Worth v. Tyler*, 276 F.3d 249, 259 (7th Cir. 2001). Importantly, assertions that a plaintiff is in the process of receiving a right-to-sue letter is not sufficient to cure the defect. *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025).

Here, Plaintiff asserts that he filed a charge of discrimination with the EEOC on September 26, 2025, and that the EEOC's processing has been delayed due to the government shutdown. (D.E. 33 at ¶ 53, n.4). Plaintiff further claims that he has "been informed that Mr. Potts right to sue letter is being processed and shall be issued within the next 14 days or less." (Id). Notably, however, Plaintiff produces no charge filed against SMART-TD GO-721, let alone a right-to-sue letter from the EEOC.

The only charge attached to his Amended Complaint as Exhibit D identifies Metra, and only Metra, as the respondent that discriminated against him, and lists Metra's address.[5] (D.E. 33-4). Plaintiff produces no charge against the Union, nor does he even allege that a charge beyond the one attached as Exhibit D has been filed. This is fatal to his claim. Absent exceptions not relevant here, "a party not named as the respondent to an EEOC charge may not be sued

---

[5] Plaintiff checks the box for both "Employer" and "Union" on the form, but such is insufficient to constitute filing a charge against SMART-TD GO-721, as Metra is identified as the charged party.

8

under Title VII." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). Although in theory, the absence of a right-to-sue letter could be cured prior to dismissal, Plaintiff has not yet even filed a charge against the Union, let alone received a right-to-sue letter to date, compelling dismissal.

Further, Plaintiff's failure to exhaust his administrative remedies renders certain claims untimely and beyond cure. In Plaintiff's EEOC charge, he references conduct alleged in May, November, and December 2024. (D.E. 33-4). Any claims brought against the Union pursuant to those allegations are untimely as a matter of law, as they occurred more than 300 days ago. *See Farris v. Vector Constr. Inc.*, 2023 WL 4883491 at *2 (7th Cir. Aug. 1, 2023) (affirming dismissal of claims based on discrete acts that occurred more than 300 days before EEOC charge was filed). As Plaintiff has failed to take the proper steps to exhaust his administrative remedies, his Amended Complaint as it pertains to SMART-TD GO-721 should be dismissed.

**B. Plaintiff Fails to Plead a Valid Cause of Action**

    **1. Plaintiff Fails to Plausibly Plead the Union Acted in a Discriminatory Fashion.**

Even if Plaintiff had filed a charge against the Union and obtained a right-to-sue letter, the Complaint fails to state a cognizable claim for relief against SMART-TD GO-721. His allegations amount to nothing more than a claim that the Union failed to intervene in Metra's disciplinary process, conduct that is legally insufficient as a matter of law.

As a general rule, a union does not have an affirmative obligation to remedy discrimination in the workplace. *See EEOC v. Pipefitters Ass'n Union Local 597*, 334 F.3d 656, 660-61 (7th Cir. 2003). "[I]naction, unless invidious, is not discrimination in any accepted sense of the term." *Id.* at 660. Rather, a union violates Title VII if it 'discriminates in the performance of its agency function." *Id.* at 659. To plead a valid case for discrimination, a plaintiff must

9

plausibly allege "that the Union's action or inaction was for the purpose of discriminating on the basis" the plaintiff claims, *i.e.*, race, sex, or religion. *Nealon v. Int'l Bhd. of Teamsters, Local 700*, 2025 WL 2696582 at *3 (N.D. Ill. Sept. 22, 2025). Claims that a union failed to aid a member or ratified and encouraged discriminatory conduct by the employer is, on its own, insufficient to state a valid cause of action. *Id*.

Here, Plaintiff alleges, "[u]pon information and belief similarly situated non-African American employees outside the protected class were treated more favorably by Metra and SMART as it pertained to the OEIG Investigations and other disciplinary procedures implemented by Metra." (D.E. 33 at ¶ 38). He further asserts that he "complained to Metra leadership and union representatives about the disparate treatment and disciplinary procedures regarding black employees compared to their non-African American counterparts." (D.E. 33 at ¶ 29). He then contends that he "did not have the full support of the union working on his behalf and it appears the union was working in conjunction with Metra to silence his grievances, complaints and concerns." (D.E. 33 at ¶ 48). Finally, Plaintiff alleges that the Union declined to appeal his termination. (D.E. 33 at ¶ 52). These allegations fall far short of the pleading requirements to establish a claim for discrimination in violation of Title VII.

First, Plaintiff's "[u]pon information and belief" assertion that non-African American employees received more favorably treatment is entirely conclusory and devoid of any supporting factual allegations. The Seventh Circuit has held that bare allegations on "information and belief" are insufficient where they wholly lack any specificity. For example, in *Yeftich v. Navistair, Inc.*, union members filed suit against their union for breach of the duty of fair representation. *Yeftich v. Navistair, Inc.*, 722 F.3d 911 (7th Cir. 2013). Central to their claim was an allegation on "information and belief" that grievances were not processed on behalf of the

plaintiff members. *Id*. at 917. The Seventh Circuit affirmed the district court's dismissal of the suit, finding that the lack of any specificity, *i.e.*, who filed grievances, dates, etc… left the court "[w]ithout at least some background factual content," rendered the allegations wholly conclusory. *Id*. The same reasoning applies here. Indeed, Plaintiff merely states that other non-African American members were treated more favorably, but does not identify any specifics, including who these employees were, how they were treated, and/or how their circumstances differed.

Second, his allegation that the Union did not provide him with full support is belied by both his own contradictory allegations which demonstrate the opposite, as well as documents he referenced in the Complaint. In addition, it is directly contrary to established case law regarding a union's liability with respect to Title VII claims. It is well-settled that allegations that a union ratified or encouraged discrimination or failed to provide aid are insufficient. *See Nealon*, 2025 WL 2696582 at *3. Rather, Plaintiff must allege that the Union discriminated against him in the performance of its agency functions. *See Pipefitters, supra*. While Plaintiff claims that the Union refused to appeal his termination, he fails to allege that such refusal was done for the purpose of facilitating discrimination. *See Engstrom v. Air Line Pilots Ass'n*, 2024 WL 3848512 at *8 (N.D. Ill. Aug. 16, 2024) ("a plaintiff must plausibly allege that a union's inaction was in fact selective in a discriminatory fashion"). Indeed, Plaintiff's allegations in the Complaint demonstrate that the Union did take his prior discrimination complaints seriously and took action, filing a grievance with regard to Metra's alleged discriminatory "racial steering" practice in hiring. (D.E. 33-2).

Nearly three years later, Metra dismissed Plaintiff from employment following an OEIG investigation concluding he had obtained PPP loans using falsified and/or fraudulent

11

information. (D.E. 33-3). Plaintiff does not allege facts supporting even an inference that the Union's alleged refusal to progress his discharge grievance was for the purpose of discriminating against him based on a protected characteristic, as is required. See Engstron, supra. He fails to allege "at least some background factual content" to support his bare assertions that the Union treated him or any other African American members who were disciplined for fraud pertaining to PPP loans in a discriminatory manner. As Plaintiff was admittedly found by the OEIG report to have violated federal law in fraudulently obtaining PPP loans, Plaintiff must meet the burden of establishing at least an inference that the Union's alleged refusal to appeal his termination was unrelated to the government's findings, and that the Union's alleged inaction in its refusal was in fact for a discriminatory purpose.[6] He fails to do so here. Accordingly, Plaintiff fails to state a claim for discrimination in violation of Title VII and his Amended Complaint should be dismissed.

### 2. Plaintiff Fails to Plausibly Plead the Union Retaliated Against Him.

To establish a claim for retaliation in violation of Title VII, a plaintiff must allege that he or she "engage[d] in activity protected by Title VII and suffer[ed] an adverse employment action as a result." *Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 501 (7th Cir. 2017). The Seventh Circuit has defined "protected activity" as "some step in opposition to a form of discrimination that the statute prohibits." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011). "A protected activity can include some step in opposition to a form of discrimination protected under the statute, and the employee needs only a good-faith and

---

[6] It is well-accepted that employees have no absolute right to have grievances processed. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967).

reasonable belief that the conduct she is opposing is unlawful." *Owens v. Old Wisconsin Sausage Company, Inc.*, 870 F.3d 662, 668 (7th Cir. 2017).

As support for his claim of retaliation against the Union, Plaintiff attaches email correspondence between himself and GC Waugh regarding complaints he raised over Metra supervisors smoking in prohibited areas. (D.E. 33 at ¶¶ 62-64). Plaintiff alleges that "he was subjected to and singled out for adverse employment actions that similarly situated persons who did not engage in reporting Metra superiors and officials to HR for safety violations and other violations of Metra's policies were not." (D.E. 33 at ¶ 75). From this, Plaintiff then leaps to the contention that he was somehow retaliated against by the Union.

As an initial matter, the conduct Plaintiff complains of with respect to Metra management is not "discrimination protected under the statute." *Owens, supra*. Plaintiff's complaints were that Metra supervisors were smoking in violation of "state/federal law, multiple Metra rules…, city of Chicago and Prudential building regulation[s]…" (D.E. 33-6 at pg. 1). GC Waugh responded to Plaintiff that he believed it was "more advantageous for the members [Plaintiff] represent[s] to maintain a good working relationship with local management," but stated he would "handle this complaint immediately and make sure it's resolved to satisfaction ensuring it will no longer happen."[7] (D.E. 33-6 at pg. 2). Plaintiff responded that it could be a good idea to "let them off the hook as long as it also allows for a conversation to be had regarding the trumped up charges they collectively just put on the members we represent…" (D.E. 33-6 at pg.

---

[7] As part of the duty of fair representation owed to all members of the bargaining unit, unions are permitted to consider the benefit of the collective whole rather than any individual employee, as "unions 'represent all the employees acting as a unit by majority vote,' and 'majority rule is an important characteristic' of the 'collective action' unions take to benefit their members." *English v. Service Employees Int'l Union, Local 73*, 458 F.Supp.3d 948, 953 (N.D. Ill. 2020) (*quoting Garcia v. Zenith Elects. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)).

13

2). Plaintiff then followed up by email two days later on May 16, 2024, saying, "[i]f you could please provide Mr. Porsche and local leadership with how those company officers are going to be disciplined for their actions and conduct unbecoming of officers." (D.E. 33-6 at pg. 1).

It is difficult to perceive how the act of reporting complaints of supervisors smoking at work can be reasonably believed to be connected to any protected activity under Title VII. In an attempt to bridge the gap, Plaintiff alleges that there existed a "contrast in how Mr. Waugh and Metra addressed the three Metra officials in violation of the safety regulations and policies and how they treated the disciplinary procedures of Mr. Steele and Mr. Sigler the month before." (D.E. 33 at ¶ 64). Importantly, Plaintiff does not and cannot allege that the Union is an employer of Metra supervisors and has authority to discipline them for smoking at work. Nor does, or can, Plaintiff allege that the Union is responsible for Metra's alleged disparate treatment of Metra supervisors in comparison to Union-represented employees. Further, Plaintiff does not allege that that Mr. Sigler and Mr. Steele were discriminated against on the basis of any protected characteristic. Rather, Plaintiff appears to complain that Metra supervisors were treated differently than non-supervisors. Plaintiff then contends that GC Waugh should attempt to leverage this smoking violation in Mr. Steele and Mr. Sigler's discipline matters.[8] (D.E. 33-6 at pg. 2).

Plaintiff's allegations demonstrate a lack of any reasonable belief that he was engaged in activity protected under Title VII. Further, Plaintiff fails to allege that the Union's purported refusal to appeal his termination was in any way tied to his reports to GC Waugh about Metra supervisors smoking and the disparate treatment of Union members. Courts have recognized that

---

[8] Notably, Plaintiff was aware that Metra's smoking policy required reports of violations to be made directly to human resources, but he failed to do so, only reporting it to GC Waugh. (D.E. 33-6 at pg. 3).

while "suspicious timing can support an inference of a retaliatory motive, such a long gap between the protected activity and adverse action can weaken and eventually break an inference of causation." *Lesiv v. Illinois Central R.R. Co.*, 39 F.4th 903, 920 (7th Cir. 2022) (internal quotations omitted) *see also Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 618 n.8 (7th Cir. 2001) (noting intervals of three, four, five, six and eight months "similarly have been determined to be too long to support an inference of retaliation.") (*rev'd on other grounds Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).[9]

Here, Plaintiff alleges retaliatory conduct in April 2025, nearly a year after he raised his complaints with GC Waugh regarding Metra supervisors smoking. Even assuming Plaintiff engaged in protected activity by contacting GC Waugh, the nearly year-long gap between that activity and the alleged retaliation strongly undermines any inference of retaliation. *Oest, supra*. Accordingly, Plaintiff fails to state a claim for retaliation pursuant to Title VII, and his Amended Complaint should be dismissed.

## **CONCLUSION**

For the aforementioned reasons, Plaintiff has failed to state a claim for discrimination against SMART-TD GO-721. Accordingly, his Amended Complaint should be dismissed pursuant to FRCP 12(b)(6).

---

[9] Plaintiff also alleges he was "blocked… from attending key meetings discussing disparate treatment, discriminatory practices, hostile work environments and low morale amongst employees." (D.E. 33 at ¶ 67). Such fails to support an inference of retaliation, as it is necessary for there to be a "materially adverse employment action" such as diminishing an employee's compensation and other benefits including termination, reducing long-term career prospects, or changing working conditions that results in humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration to the workplace environment. *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017).

15

Respectfully submitted,

/s/ Shawn M. McKinley
Shawn McKinley
Erika Diehl-Gibbons
Bailey Scheck
SMART-Transportation Division
6060 Rockside Woods N. Suite 345
Independence, OH 44131
Tel:    (216) 228-9400
Fax:    (216) 228-0937
smckinley@smart-union.org
ediehl@smart-union.org
bscheck@smart-union.org

<b><u>CERTIFICATE OF SERVICE</u></b>

The undersigned hereby certifies on the 3rd day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Glori Chantel Bond
The Bond Legal Group LLC
1115 Amherst Ln
University Park, IL 60484
(708) 412-1536
Email: gbond@thebondlegalgroup.com
*Counsel for Plaintiff Antwan Potts*

Renee L. Koehler
Koehler Dinkel LLC
900 S. Frontage Road, Suite 300
Woodridge, IL 60517
(630) 505-9939
Email: rkoehler@kdllclaw.com
*Counsel for Defendant Metra*

Stephanie Melissa Gomberg Dinkel
Koehler Dinkel LLC
900 S. Frontage Road, Suite 300
Woodridge, IL 60517
(630) 505-9939
Email: sdinkel@kdllclaw.com
*Counsel for Defendant Metra*