IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTWAN POTTS,<br><br>Plaintiff,<br><br>and<br><br>NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, SMART-TD GO721<br><br>Defendant. | Case No. 1:25-cv-6156<br><br>Hon. Elaine S. Bucklo<br><br>Jury Trial Requested |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SMART'S 721'S 12(B)(6) MOTION TO DISMISS**

Now comes Plaintiff ANTWAN POTTS (hereinafter "Mr. Potts" or "Plaintiff") through his attorney, Glori C. Bond, of The Bond Legal Group, LLC respectfully submits his response in opposition to Defendant SMART-TD GO-721 (hereinafter "SMART", "Union" or "Defendant"), 12(b)(6) Motion to Dismiss (hereinafter, "Motion") and in support of its opposition the following:

**INTRODUCTION**

The Plaintiff has had a long and at times tumultuous history with the Defendant. Mr. Potts started his career with the Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra (hereinafter "Metra") almost 20 years ago in 2008. As part of his employment with Metra, Mr. Potts joined the Union. Mr. Potts' participation in the Union would begin to shape his work, leadership and advancement opportunities and experiences. Over time, there became a very noticeable shift in his relationship with the Union. His relationship with the Union would go from

1

being collaborative to adversarial. Mr. Potts role within the Union has always been one of advocating for change, taking the steps to enforce the rights of others and calling out discriminatory practices, policies and procedures, which is the basis for his First Amended Complaint (hereinafter, "FAC"). ECF No. 33.

## FACTUAL BACKGROUND

Mr. Potts was employed by Metra from December 01, 2008, until December 04, 2024. Mr. Potts was terminated on December 04, 2024 and received a post termination hearing on April 01, 2025. During his tenure at Metra, Mr. Potts held the following union positions: 1) union trustee (2014-2016), 2) vice local chairman (2015) 3) local chairman (2016-2019), and 4) state safety legislative local representative (2023-2024). From 2019-2023, Mr. Potts did not serve in the union chairman position. (*ECF No*. 33 at ¶ 8). On June 16, 2022, Mr. Potts filed a charge of discrimination against Metra with the Equal Employment Opportunity Commission (hereinafter, the "EEOC"), cross-filed with the Illinois Department of Human Rights (hereinafter, the "IDHR"). In this cross-filed complaint with the EEOC and IDHR Mr. Potts alleged that Metra violated federal law by committing 1) wage discrimination on the basis of race, 2) harassment on the basis of race and 3) retaliation for engaging in protected activity. *Id*. at ¶12.

On or about April 07, 2024, Mr. Potts complained to Metra leadership and union representatives about the disparate treatment in disciplinary procedures regarding black employees compared to their non- African American counterparts. *Id*. at ¶29. On May 07, 2024, Mr. Potts was contacted by the Office of the Executive Inspector General (hereinafter, "OEIG") for an interview. During this interview OEIG informed Mr. Potts they were in contact with Metra officials. On August 16, 2024, the IDHR entered a finding of substantial evidence with respect to wage discrimination and requested a further investigation. *Id*. at ¶¶30-31. On October 18, 2024, the

2

IDHR filed a Complaint on behalf of Mr. Potts. Less than a month later on November 19, 2024, Mr. Potts was notified by Metra that he was under investigation for misconduct. On November 25, 2024, Mr. Potts was notified that he was being removed from service pending a formal investigation with respect to the violation of Rules Nos. 1.6 (4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, effective April 1, 2020. On December 4, 2024, Mr. Potts was notified he was terminated. *Id*. at ¶¶ 32-34. at Mr. Potts filed Charge No. 440-2025-12358 with the EEOC on September 26, 2025. *ECF No.*33-4*.* On December 05, 2025, Mr. Potts filed Amended Charge No. 440-2026-01964 against SMART TD GO-721 on the basis of race and discrimination.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3D 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint needs only factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## **ARGUMENT**

As outlined below, Plaintiff contends that he has exhausted his administrative remedies as required under Title VII. Additionally, Plaintiff avers that he will be able to show that his

3

discrimination and retaliation claims are plausible against the Union. In the alternative, Plaintiff request leave to file a second amended complaint to cure any remaining deficiencies. Accordingly, Defendant's motion to dismiss should be denied or in the alternative rendered moot.

I. PLAINTIFFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Mr. Potts has exhausted his administrative remedies as it to pertains to filing a charge with the EEOC and has received a right to sue letter against SMART. SMART argues in their motion to dismiss that Mr. Potts failed to exhaust his administrative claims and that his allegations are untimely. SMART, further stated, "Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right-to-sue letter". *ECF No. 39* at pg. 8. On September 26, 2025, Mr. Potts filed a Charge with the EEOC against Metra and in that Charge identified his employer and the union. *ECF No*. 33-4. However, four days later, on September 30, 2025, the U.S. Government entered into a shutdown, technically starting at midnight. During this shut down there was a severe delay in the processing of EEOC claims and the government was working with a skeleton staff. The EEOC issued a right to sue letter for Charge No. 440-2025-12358 for Metra only. (Exhibit A).

On December 05, 2025, Mr. Potts filed an Amended Charge No. 440-2026-01964 against SMART TD GO-721 on the basis of race and discrimination (hereinafter, the "Charge"). (Exhibit B). Mr. Potts took the necessary steps to remedy and cure the deficiency in his pleadings as it pertained to the Union being listed as a charged party. "Documents attached to a motion to dismiss may be considered in ruling on a motion to dismiss if the document is referenced in the complaint and the document is "central" to a plaintiff's claim". *See* Wright v. Associated Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994). In Charge No. 440-2026-01964 Mr. Potts states the earliest discrimination of race and retaliation occurred on June 20, 2020 and that the latest occurred on

4

April 01, 2025 and that discriminatory and retaliatory behavior was ongoing. In Mr. Potts' Charge against the Union Mr. Potts avers that union did not properly challenge or confront the disparate treatment of protected employees when brought to the attention of the Union. Mr. Potts further alleged in the Charge that the Union retaliated against him as a result of his refusal to participate in disparate treatment pertaining to disciplinary proceedings, pay inequalities, and wage discrimination based on race. The aforementioned does not exhaust the claims made by Mr. Potts against the Union in the Charge. Exhibit B.

On December 09, 2025, the EEOC issued Mr. Potts a right to sue letter against the Union. Exhibit C. Mr. Potts took the proper steps to ensure that he exhausted his administrative remedies and received a right to sue letter against the Union. In Mr. Potts' Charge he alleges that while the discrimination as it pertains to the Union started in June 2020, the last incident with the Union at the time of the Charge was April 01, 2025. In Mr. Potts' Charge he also indicated that the behaviors were ongoing. If allowed to file a second amended complaint Mr. Potts avers that he will be able to cure any deficiencies as it pertains to a Charge that lists the Union along with a Right to Sue Letter. Additionally, Mr. Potts will be able to cure any deficiencies as it pertains to the timeliness of his claims. As it pertains to the SMART's claims that Mr. Potts claims would be untimely under the newly issued Charge, Mr. Potts lists the dates the discrimination took place as of April 01, 2025 and that the behavior has been ongoing. 300 days from April 01, 2025 and any subsequent action after that would be January 26, 2026. Mr. Potts right to sue letter was issued on December 09, 2025 and his Charge was perfected on December 05, 2025, therefore making Mr. Potts claims timely. Mr. Potts respectfully request the Union's Motion to Dismiss be denied or the in alternative request leave to amend the Complaint so he can update his pleadings with the right to sue letter against the Union along with amend his allegations to cure any deficiencies contained in the FAC specifically

as it pertains to listing the Union as the charged party, and claims deficient as it pertains to timeliness..

II. PLAINTIFF HAS PLEAD A VALID CAUSES OF ACTION

a. The Union Acted in a Discriminatory and retaliatory manner

In order to survive a motion to dismiss, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Ashcroft*, at 678. The Plaintiff can show that the Union acted or operated at times in a discriminatory manner. The Defendant incorrectly and over simplifies that the Plaintiff allegations that the Union simply did not intervene in Metra's disciplinary process completely dismisses or at times ignores the other allegations set out in the Plaintiff's amended complaint. (ECF No. 39 at page 9). The Union further goes on to state, "As a general rule, a union does not have an affirmative obligation to remedy discrimination in the workplace. See EEOC v. Pipefitters Ass'n Union Local 597, 334 F.3d 656, 660-61 (7th Cir. 2003). "[I]naction, unless invidious, is not discrimination in any accepted sense of the term." Id. at 660. Rather, a union violates Title VII if it 'discriminates in the performance of its agency function." Id. at 659 (*ECF No. 39* at page 9).

In the FAC, Mr. Potts provided a series of events where he complained to union representatives and chairman regarding the inconsistencies amongst conductors of color as it pertained to disciplinary procedures, processes and policies. Mr. Potts then highlighted the contrast in how Mr. Waugh and Metra addressed the three Metra officials in violation of the safety regulations and policies and how they treated the disciplinary procedures of Mr. Steele and Mr. Sigler the month before. Mr. Potts made it clear that he was in opposition to their treatment and the handling of their discipline. Mr. Potts assisted other Metra conductors in their disciplinary

6

hearings and procedures, often highlighting the inconsistencies in the reprimand for Metra's black train conductors, opposed to other conductors and employees who are not of a protected class. The Defendant argued that Unions does not have the affirmative obligation to remedy discrimination in the work place, Court have held that it does not give them the license to do nothing. *Maalik v. International Union of Elevator Constructors, Local* 2, 437 F.3d 650 (2006).

It is not the Plaintiff's contention that the Union is supposed to "force Metra" to give the Plaintiff his job back. However, it is the Plaintiff's contention that are not to turn a blind eye or be a willful participant in discriminatory behavior or to essentially do nothing. The Union as of this filing still has not filed a post-termination appeal on the Plaintiff's, where as it has done so for other Metra train conductors that were the subject of the OEIG investigations and some of them have even been able to get their jobs back.

To establish a claim for retaliation in violation of Title VII, a Plaintiff must allege that he or she "engage[d] in activity protected by Title VII and suffer[ed] an adverse employment action as a result." Plaintiff alleges that they filed multiple grievances with Union, that they escalated disparate treatment to union officials. If provided the opportunity to amend the complaint Plaintiff avers, that will be able allege with specificity, dates, names and specific instances going from April 01, 2025. [1]

If the Court concludes any allegation is deficient, Plaintiff respectfully requests leave to amend. Rule 15(a)(2) instructs courts to "freely give leave when justice so requires," and the Seventh Circuit generally favors permitting amendment after a Rule 12(b)(6) challenge. Plaintiff avers that if allowed to file a second amended complaint it will be able to cure the issues identified, is not

---

[1] Due to technical difficulties the latter portion of the Plaintiff's arguments as it pertains to failure to state a claim for discrimination and retaliation. If provided with the opportunity Plaintiff will remedy those arguments.

7

the product of undue delay or bad faith, causes no undue prejudice, and is not futile at this stage in the pleadings.

## CONCLUSION

For the reasons stated above, the Plaintiff, Antwan Potts request that this Court: (1) Deny the Defendant's Motion to Dismiss on that grounds that the Plaintiff failed to exhaust his administrative remedies; (2) Deny the Defendant's Motion to Dismiss by finding that Plaintiff has adequately plead viable causes of action at this stage of the pleadings for discrimination and retaliation by the Union; (3) Grant Plaintiff leave to file an second amended complaint to rectify any deficiencies contained in the Amended Complaint and (4) grant any further relief that the Court deems just and proper.

DATED: January 20, 2026

**/s/ *Glori C. Bond***
Glori C. Bond
(ARDC #6329463)
The Bond Legal Group, LLC
P.O. Box 39
Matteson, IL 60443
gbond@thebondlegalgroup.com
*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on January 20, 2026 she caused a copy of the foregoing Plaintiffs' Response in Opposition to Defendant SMART TD GO 271's 12(b)(6) Motion to Dismiss to be filed electronically with the Clerk of the Northern District of Illinois, Eastern Division, and served electronically through the e-filing system.

/s/Glori C. Bond