ANTWAN POTTS,                          )
                                       )
          Plaintiff,                   )
                                       )
                                       )
     v.                                )   No. 25 C 6156
                                       )
                                       )
NORTHEAST ILLINOIS REGIONAL            )
COMMUTER RAILROAD CORPORATION          )
d/b/a/ METRA, SMART-TD GO721,          )
                                       )
          Defendants.                  )

## Order

The Amended Complaint in this case alleges that defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra") fired plaintiff Antwan Potts, a black man, from his job as a railway conductor because of his race and because he objected to Metra's discriminatory employment practices. Plaintiff also claims that the union that represented him, defendant SMART-TD GO721 ("the Union"), discriminated against him by failing to appeal his termination and by mishandling his complaints about Metra's discriminatory conduct. Plaintiff asserts Title VII claims for discriminatory termination and retaliation against both defendants. In addition, he asserts a Title VII claim for wage discrimination, a claim for violation of the Illinois Whistleblower Act, and a claim for intentional infliction of emotional distress against Metra. In separate motions,

both defendants seek dismissal of the Amended Complaint. Additionally, the Union moves for Rule 11 sanctions against plaintiff and his counsel. I resolve these motions as follows.

The Amended Complaint is not a model of clarity. It recounts a disjointed narrative of events and circumstances apparently spanning a period beginning sometime in 2019 and ending in April of 2025, but not all of the conduct it describes is tethered to a particular timeframe. Let us begin with plaintiff's Title VII claims. To state a viable claim for discriminatory termination, plaintiff must plead "termination on the basis of a protected trait, the events leading to the termination, and the relevant dates." *Butler v. Ind. Harbor Belt R.R. Co.*, 640 F. Supp. 3d 824, 828 (N.D. Ill. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 999 (2002). To plead a retaliation claim, he "must allege that [he] engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity[.]" *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013).

In support of these claims, plaintiff alleges that in approximately June of 2020, he began raising concerns to Metra's leadership about "discriminatory practices and unfair treatment," including "pay disparities and inequities among the Metra Electric District ["MED"] employees." Am. Compl. at ¶¶ 9-10. In this connection, plaintiff alleges that he raised concerns about a

situation he describes as follows:

> 90% of MED's conductors are black. And its ridership reflects this as well. The agreement for MED is the same as the rest of the districts but essentially MED conductors essentially work their 6th day for free, while other districts receive payment for their 6th day of work.... Metra's labor relations director did not respond to fully address the grievances submitted until over a year later on August 23, 2021.

*Id*. at ¶ 10. I assume that "the agreement" refers to the collective bargaining agreement ("CBA") governing the relationship between Metra and the Union, although the Amended Complaint leaves this to conjecture. Nor is it clear from plaintiff's allegations whether the "grievances" referenced here were resolved on August 23, 2021, or if they matured into the discrimination charge plaintiff claims to have filed in July of 2022, or if they proceeded in some other fashion. In any event, although the tenor of these allegations suggests a species of disparate impact claim, the Amended Complaint does not describe the racial composition of conductors in any district other than the MED, nor even does it make clear if plaintiff himself worked in the MED, or if the concerns he raised were on behalf of others.

The Amended Complaint goes on to recount that on June 16, 2022, plaintiff filed an EEOC charge against Metra alleging 1) wage discrimination on the basis of race, 2) harassment on the basis of race, and 3) retaliation for engaging in protected activity. Am. Compl. at ¶ 12. In July of 2022, the Union allegedly issued a Notice of Practice Abandonment pursuant to the CBA as well as a grievance,

both pertaining to Metra's alleged steering of African Americans to the lowest-paying MED district. Am. Compl. at ¶¶ 13-14. The Amended Complaint does not say what became of these actions under the CBA. It alleges, however, that the EEOC issued a right to sue letter in conjunction with the June 16, 2022, charge, and that IDHR "entered a finding of substantial evidence with respect to wage discrimination." Am. Compl. at ¶ 12 n. 3 and ¶ 31. Plaintiff acknowledges, however, that no suit was ever filed on these claims. *Id.* at n. 3. In any event, nothing in the Amended Complaint suggests a plausible causal link between the events occurring between June 2020 and June 2022 and his termination on December 4, 2024 (or any other adverse employment action).

The Amended Complaint also alleges that at an unspecified time, plaintiff and two other employees—whom he identifies by name as Taurus Sigler and Darien Steele—"refused to participate in discriminatory practices and treatment" and were threatened with disciplinary action and eventually terminated. *Id.* at ¶ 16. Plaintiff does not describe the discriminatory conduct he and Messrs. Sigler and Steele objected to, nor does he specify the "disciplinary action" with which they were threatened. Perhaps this is a reference to conduct plaintiff describes elsewhere in the Amended Complaint, when he states that on April 7, 2024, he "complained to Metra leadership and union representatives about the disparate treatment in disciplinary procedures regarding black employees compared to

4

their non-African American counterparts." *Id*. at ¶ 29. This allegation appears to relate, in turn, to an April 7, 2024, email, which plaintiff signed in his capacity as "Local Chairman 1290, Local 721 Legislative Representative," and sent to Lead Labor Relations Specialist Melisa Taylor. This email, which plaintiff attaches to the Amended Complaint, states:

> Good morning can you please advise if there is a waiver or other more suitable way to address this matter. As pulling an employee out of service in this manner is a blatant abuse of power and excessively unfair. Other non black employees in the past have done much worse and have received zero questioning of their actions.... If full investigation is what it takes then please explain in detail exactly what is the rationale behind pulling Mr. Darrien Steele out of service and please provide exact CBA language to support this action.

Am. Compl., Exh. E, ECF 33-5. The email reflects this response from Ms. Taylor: "I will ask the department if a waiver is possible for this employee." *Id*. Plaintiff also attaches a series of emails from May 13, 14, and 18, 2024, between himself and the Union's General Chairman, Edward Waugh. In these, plaintiff complains of violations of Metra's smoking regulations by "three district officers" and requests that his complaint be "investigated thoroughly by proper channels." ECF 33-6 at 3. Mr. Waugh responds:

> I am of the position that it is more advantageous for the members you represent to maintain a good working relationship with local management. Therefore, I will handle this complaint immediately and make sure it's resolved to satisfaction ensuring it will no longer happen.

*Id*. at 2. To this, plaintiff replies, "seems like a pretty good

idea...as long as it also allows for a conversation to be had regarding the trumped up charges they collectively just put on the members we represent, including Taurus Sigler and Darien Steele." *Id.* Plaintiff follows up with Mr. Waugh in the ensuing days, asking for information about how the Union was handling his complaint about the smoking violations and "how those company officers are going to be disciplined for their actions and conduct unbecoming of officers?" *Id.* at 1.

Around the same time, on May 7, 2024, plaintiff "was contacted by OEIG for an interview" in connection with an investigation into plaintiff's application for a PPP loan. *See* Am. Compl., ECF 33 at ¶¶ 30, 36, 61 and Exh. C. In a letter dated November 25, 2024, Metra removed plaintiff from service pending the results of this investigation, informing him that he was charged in connection with his application for a federal PPP loan for violation of Rules 1.6 and 1.9 of Metra's General Code of Operating Rules. Am. Compl., ECF 33 at ¶ 39 and Exh. C, ECF 33-3. On December 4, 2024, having had no hearing on these violations, Metra sent plaintiff a letter terminating him on the ground that the OEIG report found that in connection with his PPP loans, plaintiff reported "other employment" while on medical leave from Metra in violation of the CBA between Metra and the Union. *Id.* at ¶ 41; *see also* ECF 61-2 (December 4,

2024, termination letter).[1] A further investigative hearing was held on April 1, 2025. Am. Compl., ECF 33 at ¶ 42. Plaintiff alleges that he did not receive the investigation report prior to this hearing; that he had inadequate time to review the report and to prepare a defense; and that at this hearing, he was given different reasons for his termination than those Metra gave him in the December 4, 2024, termination letter. *See id*. at ¶¶ 42-46. Plaintiff also alleges that the Union did not support him adequately during the hearing and that it failed to appeal his termination. *Id*. at ¶¶ 47-52.

After both defendants moved to dismiss the Amended Complaint on various procedural and substantive grounds, plaintiff filed a flurry of responses, corrected responses, and supplemental responses, which raised arguments, asserted facts, and attached evidence in an effort to explain that while some of the allegations in the Amended Complaint were indeed inaccurate, "if afforded the ability to file a second amended complaint," he "can cure his deficiencies" in the pleadings. Pl.'s Opp. to Metra, ECF 57 at 3, 4. Notably, several of plaintiff's submissions relied on documents that were not created until after the Amended Complaint's November 19, 2025, filing. *See,*

---

[1] Although plaintiff did not attach this letter to his Amended Complaint, he refers to it in the complaint, it is integral to his claims, and he does not raise any objection to my considering it. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

e.g., Pl.'s Corrected Resp. to Union, ECF 56 at 3 (describing the EEOC Amended Charge he filed against the Union on December 5, 2025); ECF 56-2 (Amended Charge).[2] And his supplemental response is devoted primarily to: 1) a timeline of plaintiff's factual investigation to explain why his Amended Complaint alleges facts that he now concedes are incorrect; and 2) plaintiff's efforts to correct procedural missteps that defendants raised as grounds for the Amended Complaint's dismissal.[3] Although Plaintiff ultimately concedes that contrary to his allegations, the Union *did* appeal his termination, he insists that his claims against the Union remain viable—though he does not suggest a theory for how his remaining allegations establish any violation by the Union of Title VII. *Id.* at 5.[4]

In the meantime, the Union moved for sanctions against plaintiff

---

[2] To be clear, the "Amended Charge" does not amend the charge against Metra that plaintiff claims to have filed on September 26, 2025, but rather a second charge naming the Union as the charged party, which he filed on December 5, 2025, i.e., two days after the Union filed its motion to dismiss, and amended the same day.

[3] In reality, plaintiff's supplemental response more appropriately framed as an additional response to the Union's sanctions motion, not its motion to dismiss. The supplement opens: "Plaintiff submits his Supplemental Response to ensure that the Court has an accurate and complete factual record when evaluating Defendant's Motion to Dismiss." ECF 68 at 1. Plaintiff's belief that I must consider "an accurate and complete factual record" is a hint that his arguments are not properly directed to a motion under Rule 12(b)(6).

[4] The supplement also walks back plaintiff's assertion, in his initial response brief, that "that there are other people who were also subjected to an investigation by the OEIG and were essentially found guilty of misconduct and fraud" but were not fired due to the Union's efforts on their behalf. *See* ECF 56 at 8-9. Given plaintiff's retraction of this argument, the fact that the Amended Complaint makes no allegations to this effect is academic.

and his counsel, arguing that any reasonable pre-suit investigation would have revealed that the Union appealed his termination, and that plaintiff's allegations to the contrary were false. Regardless of any pre-suit investigation, the Union continues, its counsel reached out to plaintiff's counsel prior to filing its Rule 11 motion, notifying her of the inaccuracy of plaintiff's allegations and attaching documents reflecting the Union's appeals of his termination. Plaintiff's counsel acknowledges that she did not respond to this correspondence, Pl.'s Resp., ECF 63 at 6 ("sometimes things fall through the cracks") and faults the Union for failing to "follow up" with its correspondence. *Id*. at 7.

What is clear at this point is that plaintiff cannot proceed against the Union on the allegations of the Amended Complaint. All agree that his allegations concerning the Union's putative failure to appeal his termination are factually inaccurate. To the extent plaintiff otherwise faults the Union for the manner in which it participated in his disciplinary hearings, *see*, e.g., Am. Compl., ECF 33 at ¶ 48 ("Mr. Potts did not have the full support of the union working on his behalf and it appears the union was working in conjunction with Metra to silence his grievances, complaints and concerns"), these vague allegations do not raise a plausible inference of race-based discrimination.

Nor do plaintiff's allegations about the Union's allegedly disparate handling of plaintiff's complaints about Metra officers'

smoking violations, on the one hand, and the discipline of Messrs. Sigler and Steele on the other suggest either that plaintiff was the victim of race-based discrimination or that he suffered retaliation for engaging in protected activity. Indeed, the Amended Complaint does not identify the race of the officers (or, for that matter, of Messrs. Sigler or Steele, though I infer from context that they are black), nor does it offer any reason to suggest that Mr. Waugh understood plaintiff's complaint to be race-related. From all that appears, plaintiff's complaints concerned disparities between how Metra disciplined its officers and how it disciplined its rank-and-file workers, and the Union's failure to pressure Metra to correct those disparities. In other words, nothing in the Amended Complaint or attached materials suggests that plaintiff's complaints involved protected activity under Title VII. Furthermore, by plaintiff's own account, he raised these concerns in April and May of 2024—well over 300 days before the December 5, 2005, EEOC charge in which he first named the Union as the charged party.[5]

For all of the foregoing reasons, the Union's motion to dismiss is granted. Notwithstanding its motion for sanctions, the Union does

---

[5] I am mindful that plaintiff's earlier EEOC charge, has both the "Employer" and "Union" boxes checked in response to the question "Who do you believe discriminated against you?" But after "Organization Name," plaintiff wrote in: "Metra." Moreover, the only actions plaintiff complains of within the preceding 300-days are his "wrongful termination" (by Metra) on December 4, 2024, and April 1, 2025.

not oppose plaintiff's request to file amended claims. I agree with the Union, however, that any claim based on the Union's putative failure to appeal plaintiff's disciplinary proceeding, and any claim based on conduct that occurred more than 300 days before December 5, 2025 is futile and should not be included in any amended complaint.[6] But if plaintiff believes that he can allege, consistently with these parameters and with his Rule 11 obligations, conduct by the Union that would support his discrimination and retaliation claims, he has leave do so. The Union's sanctions motion is denied.

On to Metra's motion. Metra opens with the argument that plaintiff's wrongful termination and retaliation are both untimely and substantively deficient, but neither argument warrants dismissal of those claims. It is true that for his Title VII claims to be timely, plaintiff must have filed an administrative charge within 300 days of actionable conduct. *See*, e.g., *Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 851–52 (N.D. Ill. 2009) (citing cases). But the failure to do so is an affirmative defense, so dismissal is appropriate only when a complaint

---

[6] This includes, for example, conduct alleged in the December 5, 2025, charge concerning the Union's allegedly discriminatory seniority systems and the Union's alleged removal of plaintiff "from his position in the union," ECF 56-2 at 1, since plaintiff alleges that he last held a union position in 2024. Am. Compl., ECF 33 at ¶ 8. Moreover, I agree with the Union that to the extent plaintiff seeks to rely on conduct outside this window on a theory of "continuing violation," this effort is foreclosed by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and its progeny.

"unambiguously establish[es] all elements of th[at] [affirmative] defense." *Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570, 575 (N.D. Ill. 2020) (quoting *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)) (alterations in *Garrick*). That is not the case here.

All agree that any claim based on plaintiff's December 4, 2024, termination must have been raised in a charge filed or before September 30, 2025. Plaintiff alleges that he filed such a charge with the EEOC on September 26, 2025—the date that appears in handwriting next to plaintiff's signature on the charge. Am. Compl., ECF 33 at ¶ 53 and Exh. D, ECF 33-4. But as Metra observes, the charge also bears an EEOC file stamp indicating that it was "received" on November 4, 2025—four days *after* the limitations period expired. This discrepancy does not present a scenario in which the complaint and attached documents "unambiguously establish" that plaintiff's claims are untimely. Moreover, plaintiff alleges discriminatory conduct at his post-termination hearing on April 1, 2025, well within the 300-day window.[7] For these reasons, I decline to dismiss plaintiff's Title VII claims against Metra as untimely.

---

[7] Metra assumes that those allegations—which involve putative irregularities in the hearing that allegedly left plaintiff unable to present a defense to the charges against him—are directed exclusively to the Union. But that is not the only reasonable way to read the allegations.

Metra next seeks dismissal of plaintiff's Title VII discriminatory termination and retaliation claims on the ground that he has not adequately plead their prima facie elements. *See* Metra Mot., ECF 42 at 5-6. But plaintiff need not "narrate all elements of a winning claim" to survive dismissal. *Thomas v. JBS Green Bay, Inc.,* 120 F.4th 1335, 1338 (7th Cir. 2024). As the *Thomas* court explained, "[t]hat something must be proved (if plaintiff is to win) does not imply that it must be alleged in the complaint." *Id*. It is true that the Amended Complaint could have been clearer in its presentation of events. But its allegations are sufficient to "present a story that holds together," *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). The basic theory that emerges is that the putative reasons Metra gave for terminating him—that he held outside employment while on medical leave from Metra and that he made false statements in conjunction with PPP loans—were pretextual, and that the real reason for his termination was race discrimination and his vocal opposition to it. His allegations in support of that theory state claims for relief under Title VII.

Metra's challenges to plaintiff's remaining claims, however, are meritorious. In Count III, plaintiff asserts a wage discrimination claim that he frames as arising under Title VII. I agree with Metra, however, that this claim is preempted by the Railway Labor Act, which provides "a comprehensive framework for

resolving labor disputes in the railroad industry. *Brown v. Illinois Cent. R.R. Co.,* 254 F.3d 654, 658 (7th Cir. 2001) (internal quotation marks and citation omitted). Plaintiff's insistence that this claim is grounded in Title VII rather than the CBA between Metra and the Union is belied by his allegations and accompanying materials. Indeed, every substantive allegation in support of this count references Metra's "seniority system" or "seniority units," which are governed by the CBA. Recall plaintiff's complaints in this connection allege "racial steering" and the disparate impact of the CBA's wage provisions on conductors in the predominantly black MED. *See* Am. Compl. at Am. Compl. at ¶¶ 9-10 ("[t]he agreement for MED is the same as the rest of the districts but essentially MED conductors essentially work their 6th day for free, while other districts receive payment for their 6th day of work[.])" Underscoring the significance of the CBA, plaintiff attaches an exhibit captioned, "Notice of Practice Abandonment," in which the Union demanded that Metra "abandon *a practice that is contrary to clear and unambiguous agreement provisions of the Collective Bargaining Agreement* between the parties dated October 16, 1986, as amended." ECF 33-2 (referencing the CBA's non-discrimination provisions). Because plaintiff's wage discrimination claims cannot be resolved without interpreting the CBA, they are preempted.

Plaintiff's citation *Lorance v. AT & T Techs., Inc.,* 490 U.S. 900 (1989), does not compel a contrary conclusion. In that case—

14

which involves neither the Railway Labor Act nor any question of preemption—the Supreme Court held that the limitations period for disparate impact claims based on facially-neutral seniority systems begins to run at the time the seniority system was adopted. *Id*. at 909. In this connection, the Court reiterated that "the fact that a seniority system has a discriminatory impact is not alone sufficient to invalidate the system; actual intent to discriminate *must be proved.*" *Id*. at 908-09 (quoting *American Tobacco Co. v. Patterson,* 456 U.S. 63, 65 (1982) (emphasis in *Lorance*)). Accordingly, Title VII liability requires "a finding of actual intent to discriminate on [statutorily proscribed] grounds on the part of those who negotiated or maintained the [seniority] system." *Id*. at 905 (alterations in the original). Nowhere does the complaint allege that Metra's seniority systems were adopted or maintained with discriminatory intent. At all events, if this is plaintiff's theory, his claim is unambiguously time-barred, as he claims to have challenged Metra's pay disparities beginning in 2020—so any seniority system that yielded those inequities had to have been in place before that date, and thus long before plaintiff filed his EEOC charge.

Finally, Metra raises various arguments for dismissal of plaintiff's claims under the Illinois Whistleblower Act and the common law of Intentional Infliction of Emotional Distress, to which plaintiff offers no substantive response. Accordingly, he

has forfeited the opportunity to proceed on these claims. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) (failure to respond substantively to motion to dismiss results in forfeiture).

For the foregoing reasons, the Second Amended Complaint is dismissed as to all but Counts I and II against Metra. Plaintiff may file a second amended complaint consistent with this decision on or before June 8, 2026.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 8, 2026

16