**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTWAN POTTS,<br><br>Plaintiff,<br><br>v.<br><br>NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA.<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:25-cv-06156<br>)<br>)<br>) Judge Elaine E. Bucklo<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT METRA'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COMES Defendant, Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra" or "Defendant") by and through its attorneys, Koehler Dinkel LLC, for its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint and denies each and every allegation set forth in the Second Amended Complaint except as hereinafter answered.

1. This lawsuit arises from an employment discrimination action. Mr. Potts is a 48-year-old African American man who worked for Metra for almost 20 years. Mr. Potts was employed by Metra from December 01, 2008, until December 04, 2024, until his employment was terminated after almost three years of continued discrimination, harassment, and retaliation. Metra has systemically created a discriminatory and retaliatory work environment against African Americans. Metra's discriminatory and retaliatory practices are steeped deep within Metra's legal department, police department, as well as its train conductors and engineers. Despite Mr. Potts' many years of service, where he has occupied several positions, including being the local union chairman, Metra subjected Mr. Potts to unlawful discrimination as an African American male. In addition, to its discriminatory behaviors, Metra has also retaliated against Mr. Potts after he complained about his unlawful treatment, the unlawful treatment of other similarly situated Metra employees, as well as Metra's violations of Federal transit laws, and OSHA. As a result of Metra's unlawful conduct, Mr. Potts has suffered reputational harm, irreparable harm to his career, as well as work related induced stress and harm to his mental health. Mr. Potts now seeks redress for harassment, retaliation, mistreatment, discrimination and unlawful termination.

1

**ANSWER:** Paragraph 1 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 1 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 1 are not stricken by the Court, Metra denies.

2. Plaintiff Antwan Potts worked for Metra from December 01, 2008, to December 04, 2024, before his unlawful termination.

**ANSWER:** Metra admits that Plaintiff was hired by Metra on December 8, 2008 and was terminated from employment on December 4, 2024. Metra denies that Plaintiff was hired on December 1, 2008 and denies the remaining allegations in paragraph 2 of Plaintiff's Second Amended Complaint.

3. Metra is a public corporation and Transportation Agency created under the Regional Transportation Authority Act, 70 ILCS 36.15/1.01 et. seq. Metra is one of the largest commuter rail systems in North America, serving Cook, DuPage, Will, Lake, Kane, and McHenry counties in Northeastern Illinois. Metra is the rail system serving the six-county Chicago area. Metra provides service to and from downtown Chicago with 243 stations over 11 routes totaling nearly 500 route miles. Metra remains one of the largest and most complex rail systems in North America, with a service area encompassing more than 3,700 square miles.[1]

**ANSWER:** Metra admits that it is a public corporation created pursuant to the Northern Illinois Transit Authority Act, that it provides commuter rail service in Northeastern Illinois, and that its service areas include Cook, DuPage, Will, Lake, Kane, and McHenry counties. Metra further

---

[1] https://metra.com/about-metra

**ANSWER:** Metra states that the allegations in footnote 1 of Plaintiff's Second Amended Complaint cites a website that speaks for itself and therefore no response is required. To the extent an answer is required, Metra denies any characterization of the contents of the webpage inconsistent with the webpage itself.

admits that it provides service to and from downtown Chicago. Metra denies any remaining allegations in paragraph 3 of Plaintiff's Second Amended Complaint.

4. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964 as codified 42 U.S.C. §§2000e to 2000e-17; and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 & 1367.

**ANSWER:** Metra states that the allegations in paragraph 4 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra admits that Plaintiff purports to assert claims under Title VII and denies any remaining allegations.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Venue is proper in this judicial district because the acts of complained of occurred in this district and the Defendants have caused harm to the Plaintiff in this District.

**ANSWER:** Metra admits that venue is proper in this District. Metra denies the remaining allegations in paragraph 5 of Plaintiff's Second Amended Complaint.

6. On December 01, 2008, Mr. Potts was hired by Metra to work as an Assistant Conductor Trainee. Mr. Potts served in the position of Assistant Conductor from February 2009 to March 2010. In March 2010, Mr. Potts was promoted to Conductor and served in this role until his termination on December 04, 2024.

**ANSWER:** Metra admits that Plaintiff was hired by Metra on or about December 8, 2008 and held positions including Assistant Conductor Trainee, Assistant Conductor, and Conductor. Metra denies that Plaintiff was hired on December 1, 2008 and denies that Plaintiff was promoted to Conductor in March 2010. Metra denies any remaining allegations in paragraph 6 of Plaintiff's Second Amended Complaint.

7. While employed by Metra Mr. Potts held the following union positions: 1) Union Trustee (2014-2016), 2) Vice Local Chairman (2009-2012) 3) Local Chairman (2012-2018) GCA Member, 4) Local Chairman (2023-2024) GCA Member, 5) State Safety Legislative Local Representative (2023-2024), and finally 6) Internation Voting Delegate (2023-2024).

3

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies.

8. Mr. Potts through his union positions advocated for the rights, promotions and changes that affected the African American train conductors.

**ANSWER:** Metra denies the allegations in paragraph 8 of Plaintiff's Second Amended Complaint.

9. In the five years following 2019, he pressed the executive leadership of Metra in a non-union leadership position to effectuate change and while curating conversations surrounding discriminatory practices and unfair treatment.

**ANSWER:** Metra denies the allegations in paragraph 9 of Plaintiff's Second Amended Complaint.

10. Additionally, Mr. Potts spoke up against Metra's leadership to assist dozens of Metra employees and union members from unfair disciplinary measures and terminations through his advocacy and effective representation.

**ANSWER:** Metra denies the allegations in paragraph 10 of Plaintiff's Second Amended Complaint.

11. On or about June 2020, Mr. Potts raised his concerns to Metra's executive leadership, and those concerns were submitted by the union with regard to pay disparities and inequities among the Metra Electric District employees in violation of Title VII of the Civil Rights Act of 1964. Metra Electric District (hereinafter "MED") is a primarily black district and its ridership services primarily black areas. 90% of MED's conductors are black and its ridership reflects this as well. The agreement for MED is the same as the rest of the districts but essentially MED conductors essentially work their 6th day for free, while other districts receive payment for their 6th day of work. Metra's labor relations director did not respond to fully address the grievances submitted until over a year later on August 23, 2021.

**ANSWER:** Paragraph 11 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 11 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 11 are not stricken by the Court, Metra denies the allegations.

12. The pay disparities marginalized black employees for MED and racially steered them toward the Metra Electric District

**ANSWER:** The allegations contained in paragraph 12 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 12 are not stricken by the Court, Metra denies the allegations.

13. Mr. Potts raised concerns about the working conditions during Covid specifically on the Metra Electric Districts. Metra employees were threatened with one man train crews and threatened with furloughs. They were exposed to unsafe working conditions and were not afforded the necessary equipment. The train conductors were not provided with proper personal protection equipment and other essential safeguards.

**ANSWER:** Paragraph 13 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 13 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 13 are not stricken by the Court, Metra denies.

14. From 2020-2024, the Plaintiff was subjected to an extremely hostile work environment characterized by ongoing retaliatory attacks and discrimination by Metra management and executive leadership, severely impacting his mental health and well-being.

**ANSWER:** The allegations contained in paragraph 14 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 14 are not stricken by the Court, Metra denies the allegations in paragraph 14 of Plaintiff's Second Amended Complaint.

15. In 2021, Plaintiff filed a whistleblower complaint with OSHA, alleging unsafe working conditions and retaliation for his previous complaints.

**ANSWER:** The allegations contained in paragraph 15 related to a Whistleblower claim were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 15 are not stricken by the Court, Metra denies the allegations in paragraph 15 of Plaintiff's Second Amended Complaint.

16. On June 16, 2022[2], Mr. Potts filed a charge of discrimination against Metra with the Equal Employment Opportunity Commission (hereinafter, the "EEOC"), cross-filed with the Illinois Department of Human Rights (hereinafter, the "IDHR"). In this cross-filed complaint with the EEOC and IDHR Mr. Potts alleged that Metra violated federal law by committing 1) wage discrimination on the basis of race, 2) harassment on the basis of race and 3) retaliation for engaging in protected activity.

**ANSWER:** Paragraph 16 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 16 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 16 are not stricken by the Court, Metra admits Plaintiff filed a charge of discrimination with the EEOC on or about June 16, 2022 and denies the remaining allegations in paragraph 16 of Plaintiff's Second Amended Complaint.

17. In 2022, the Illinois Department of Human Rights (IDHR) found substantial evidence of wage discrimination within the territories identified in the investigation, highlighting the disproportionate impact on African American employees. The racial makeup of these territories indicated a significant disparity, with African American employees representing 11% of the workforce but experiencing wage rates that were 17% lower than their non-African American counterparts.

**ANSWER:** Paragraph 17 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 17 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 17 are not stricken by the Court, Metra denies the allegations in paragraph 17 of Plaintiff's Second Amended Complaint.

18. On June 16, 2022, after repeated attempts as the local union chairman to organize MED conductor and bring awareness to the pay disparities and inequalities to Metra leadership Mr. Potts filed a charge of discrimination against Metra.

---

[2] Even though the EEOC issued a right to sue letter and found substantial evidence to support this claim, this claim did not proceed due to attorney negligence and missed deadlines.

**ANSWER:** Metra denies the allegations in footnote 2 of Plaintiff's Second Amended Complaint.

6

**ANSWER:** Paragraph 18 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 18 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 18 are not stricken by the Court, Metra admits that Plaintiff filed a charge of discrimination with the EEOC on or about June 16, 2022. Metra denies the remaining allegations in paragraph 18 of Plaintiff's Second Amended Complaint.

19. From 2022 to 2023, Metra and SMART engaged in the suppression of thousands of grievance claims related to disparate treatment in wages. These claims were either destroyed or not progressed, preventing exposure of both parties to two decades of wage theft.

**ANSWER:** Paragraph 19 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 19 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 19 are not stricken by the Court, Metra denies the allegations in paragraph 19 of Plaintiff's Second Amended Complaint.

20. In 2023 and 2024, SMART and Metra excluded Plaintiff from all meetings and discussions in which he had been elected by his peers to participate, undermining his role and advocacy for his fellow members.

**ANSWER:** Metra denies the allegations in paragraph 20 of Plaintiff's Second Amended Complaint.

21. On or about April 07, 2024, complained to Metra leadership and union representatives about the disparate treatment in disciplinary procedures regarding black employees compared to their non- African American counterparts.

**ANSWER:** Metra denies the allegations in paragraph 21 of Plaintiff's Second Amended Complaint.

7

22. On or about May 16, 2024, Mr. Potts sent an email to Mr. Waugh reporting and complaining that three Metra multi-district superintendent officials violated Metra's smoking regulations and policies and that they were on video.

**ANSWER:** Metra lacks sufficient information or knowledge to admit or deny the allegations of paragraph 22 and therefore denies.

23. As a result of his treatment by Metra, in May 2024, a mental health crisis caused by the ongoing retaliation prompted Plaintiff to remove himself from service to seek extensive medical care for mental health issues.

**ANSWER:** Metra denies the allegations in paragraph 23 of Plaintiff's Second Amended Complaint.

24. In May 2024, the Union terminated Plaintiff from all of his union positions for alleged non-compliance with directives while he was on a medical leave of absence for mental health reasons.

**ANSWER:** The allegations contained in paragraph 24 related to a claim against the Union were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 24 are not stricken by the Court, Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning actions allegedly taken by the Union and therefore denies the same.

25. In May 2024, following ongoing discrimination complaints, Plaintiff faced an OEIG investigation related to a whistleblower complaint and was terminated while on FMLA leave for mental health reasons.

**ANSWER:** Metra denies the allegations in paragraph 25 of Plaintiff's Second Amended Complaint.

26. On May 07, 2024, Mr. Potts was contacted by OEIG for an interview. During this interview OEIG had informed Mr. Potts they had been in contact with Metra officials.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 and therefore denies.

27. On August 16, 2024, the IDHR entered a finding of substantial evidence with respect to wage discrimination and requested further investigation.

**ANSWER:** Paragraph 27 allegations related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 27 are not stricken by the Court, Metra admits that the IDHR recommended a finding of substantial evidence in a document dated August 16, 2024. Metra denies any remaining allegations in paragraph 27 of Plaintiff's Second Amended Complaint. Metra affirmatively states that the Illinois Human Rights Commission and this Court dismissed the claims pertaining to alleged wage discrimination and thus this paragraph should be stricken.

28. On October 18, 2024, IDHR filed a Complaint on behalf of Mr. Potts, with the Commission, on the basis of unequal pay on the basis of race.

**ANSWER:** Paragraph 28 alleges claims related to alleged wage discrimination which were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 28 are not stricken by the Court, Metra admits that on October 18, 2024, the Illinois Department of Human Rights filed a Complaint on Plaintiff's behalf with the Illinois Human Rights Commission. Metra denies any remaining allegations in paragraph 28 of Plaintiff's Second Amended Complaint.

29. On November 19, 2024, Mr. Potts was notified by Metra that he was under investigation for misconduct pursuant to OEIG investigation.

**ANSWER:** Metra denies the allegations in paragraph 29 of Plaintiff's Second Amended Complaint.

30. On November 25, 2024, Mr. Potts was notified that he was being removed from service pending a formal investigation with respect to the violation of Rules Nos. 1.6 (4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, effective April 1, 2020.

9

**ANSWER:** Metra admits that Plaintiff was notified on November 25, 2024 that he was being removed from service pending a formal investigation concerning alleged violations of Rules Nos. 1.6 (4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, effective April 1, 2020. Metra denies any remaining allegations in paragraph 30 of Plaintiff's Second Amended Complaint.

31. On November 25, 2024, Mr. Potts received a Notice of Investigation for a second offence arising out of the OEIG report.

**ANSWER:** Metra admits that Plaintiff received a Notice of Investigation on or about November 25, 2024. Metra denies that the Notice concerned a "second offence" and denies any remaining allegations in paragraph 31 of Plaintiff's Second Amended Complaint.

32. Mr. Potts raised concerns against Cedric Smith, District Superintendent Supervisor, that he: (1) engaged in racial discrimination against employees, (2) intentionally created a hostile work environment, (3) maintained disparate treatment in pay and working conditions, (4) retaliated against advocates for equality, by discouraging reporting and support for affected employees.

**ANSWER:** The allegations contained in paragraph 32 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 32 are not stricken by the Court, Metra denies.

33. Mr. Potts raised concerns against Victor Flores, Director of Transportation from 2020-2024): (1) that he willfully ignored reports of unfair workplace practices within his management team, (2) that he refused to initiate investigations into allegations of discrimination, harassment, and retaliation reported by employees, (3) that he fostered an environment where discriminatory practices thrived due to his inaction, contributing to a culture of fear and silence, (4) that he allowed a culture where employees faced retaliation for voicing concerns, discouraging reporting of misconduct.

**ANSWER:** Metra denies the allegations in paragraph 33 of Plaintiff's Second Amended Complaint.

34. Mr. Potts raised concerns against David Krienke and Thomas Stubbner, in their positions as Director and Senior Director of Labor Relations from 2020-2024: that they (1) misinterpreted contracts leading to unfair treatment of employees and prolonged disputes.

10

(2) engaged in systematic delays in addressing major dispute items related to employee rights and wage practices, effectively prolonging the suffering of affected employees, (3) denied fair and equitable wage adjustments for employees, contributing to ongoing disparities in pay and benefits, (4) failed to uphold the provisions of collective bargaining agreements, which stipulate timely and fair resolution of disputes, undermining employees' rights.

**ANSWER:** Paragraph 34 violates the pleading standards of Federal Rule 8(a) and (d) and the allegations contained in paragraph 34 related to claims related to the CBA and/or wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 34 are not stricken by the Court, Metra denies the allegations in paragraph 34.

35. From 2020 until his termination Mr. Potts has been a vocal advocate against wage discrimination and disparate treatment among the Metra Electric District, more specifically, the black Metra Electric District conductors.

**ANSWER:** The allegations of paragraph 35 related to a claim of wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 35 are not stricken by the Court, Metra denies the allegations in paragraph 35 of Plaintiff's Second Amended Complaint.

36. Mr. Potts, along with two other vocal employees Taurus Sigler (hereinafter, "Mr. Sigler") and Jamal Porshe (hereinafter, "Mr. Porshe") who refused to participate in discriminatory practices and treatment, were threatened with disciplinary action and eventually terminated. Mr. Sigler was terminated in March 2025.

**ANSWER:** Metra denies the allegations in paragraph 36 of Plaintiff's Second Amended Complaint.

37. Mr. Sigler and Mr. Porshe are both African-American males and served on the Metra Electric District which a predominately African American District.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Mr. Sigler and Mr. Porshe are both African-American males and therefore

denies. Metra denies any remaining allegations in paragraph 37 of Plaintiff's Second Amended Complaint.

38. The Rock Island Metra District is a majority white male district.

**ANSWER:** Metra denies the allegations in paragraph 38 of Plaintiff's Second Amended Complaint.

39. The Chicago Union Station District is also a majority white male district.

**ANSWER:** Metra denies the allegations in paragraph 39 of Plaintiff's Second Amended Complaint.

40. Mr. Potts was subjected to abuse of power by Metra's leadership, adverse employment actions as result of his involvement in protected activities and was discriminated against based on his race.

**ANSWER:** Metra denies the allegations in paragraph 40 of Plaintiff's Second Amended Complaint.

41. These earlier events provide background and context but are not asserted as independent claims.

**ANSWER:** Paragraph 41 and the related allegations referenced as "earlier events" violate the pleading standards of Federal Rule of Civil Procedure 8(a) and (d) and the allegations related to a claim of wage discrimination and/or the CBA were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 41 are not stricken by the Court, Metra denies.

**COUNT I-TITLE VII (WRONGFUL TERMINATION -DISCRIMINATION - METRA)**

42. The Plaintiff re-alleges Paragraphs 1-41 and incorporates them by reference as fully stated herein solely to provide context and background. Plaintiff does not assert any claim based on conduct occurring outside of the 300-day period consistent with the Court's Order.

**ANSWER:** As its answer to paragraph 42, Metra repeats and re-alleges its answers to the preceding paragraphs of this Second Amended Complaint, as if fully set forth herein.

43. A protected class under Title VII of the Civil Rights Act of 1964 includes individuals who are discriminated against based on race, color, religion, sex, or national origin.

**ANSWER:** Metra states that the allegations in paragraph 43 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

44. Title VII explicitly prohibits employment discrimination on these grounds, ensuring that individuals within these categories are protected from adverse employment actions such as hiring, firing, and other terms and conditions of employment.

**ANSWER:** Metra states that the allegations in paragraph 44 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

45. It shall be unlawful employment practice for an employer to discriminate against any of his employees because he has made a charge, testified, assisted, or participated in any manner in an investigation or proceeding.

**ANSWER:** Metra states that the allegations in paragraph 45 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

46. Metra is an "employer" subject to Title VII of the Civil Rights Act of 1964 because the term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. 42 U.S. Code § 2000e(b).

**ANSWER:** Metra admits that it is an employer subject to Title VII. Metra denies any remaining allegations in paragraph 46 of Plaintiff's Second Amended Complaint.

47. Mr. Potts is an "employee" subject to Title VII of the Civil Rights Act of 1964. The term "employee" means an individual employed by an employer. 42 U.S. § 2000e(f).

**ANSWER:** Metra states that the allegations in paragraph 47 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the

extent an answer is required, Metra denies that Mr. Potts "is" an employee.

48. Metra is subject to Title VII because Mr. Potts qualifies as a protected class.

**ANSWER:** Metra states that the allegations in paragraph 48 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

49. Mr. Potts is an African American male who was employed by Metra from 2008 to 2024.

**ANSWER:** Metra admits that Plaintiff was employed by Metra from 2008 to 2024. Metra denies the remaining allegations in paragraph 49 of Plaintiff's Second Amended Complaint.

50. In December 2024, Mr. Potts served as a Conductor for Metra on the Metra Electric District a predominately African American district.

**ANSWER:** Metra admits that Plaintiff was employed as a Conductor for Metra but denies that in December of 2024 he worked on the Metra Electric District as he was on a leave of absence. Metra denies the remaining allegations in paragraph 50 of Plaintiff's Second Amended Complaint.

51. Mr. Potts was qualified for his position as a Conductor for Metra and performed his job satisfactorily.

**ANSWER:** Metra denies the allegations in paragraph 51 of Plaintiff's Second Amended Complaint.

52. On December 4, 2024, Mr. Potts was notified he was terminated pursuant to an alleged violation of section 35(l) of the NIRCRC/SMART-TD CBA.

**ANSWER:** Metra admits that Plaintiff was notified on December 4, 2024 that his employment was terminated pursuant to Section 35(l) of the NIRCRC/SMART-TD CBA. Metra denies the remaining allegations in paragraph 52 of Plaintiff's Second Amended Complaint.

53. On December 11, 2024, SMART appealed Metra's decision to terminate Mr. Potts. (Exhibit A).

14

**ANSWER:** Metra admits that Exhibit A purports to be a December 11, 2024 correspondence from SMART-TD appealing Plaintiff's termination. Metra denies any remaining allegations in paragraph 53 of Plaintiff's Second Amended Complaint.

54. Metra wrongfully terminated Mr. Potts in violation of Rule 38(b) of the NIRCRC/SMART-TD CBA (hereinafter, "CBA").

**ANSWER:** Metra denies the allegations in paragraph 54 of Plaintiff's Second Amended Complaint.

55. Pursuant to Rule 38(b) of the CBA that charges must be placed within 10 days of the date the district Superintendent receives notice of improper conduct or the employee is available for an investigation.

**ANSWER:** Metra states that the allegations in paragraph 55 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies that this allegation properly quotes the rule. Metra further states that Rule 38(b) of the applicable collective bargaining agreement speaks for itself.

56. Metra did not notify Mr. Potts within 10 days; instead, he received notice 14 days after Metra received the information.

**ANSWER:** Metra denies the allegations in paragraph 56 of Plaintiff's Second Amended Complaint.

57. Mr. Potts was not provided with a hearing for the December 4, 2024, termination.

**ANSWER:** Metra denies the allegations in paragraph 57 of Plaintiff's Second Amended Complaint.

58. Metra terminated Mr. Potts under the premise that Mr. Potts had other employment while on medical leave of absence from Metra.

**ANSWER:** Metra admits that the December 4, 2024 termination notice states that Plaintiff's employment was terminated pursuant to Section 35(l) of the NIRCRC/SMART-TD CBA. Metra denies the remaining allegations in paragraph 58 of Plaintiff's Second Amended Complaint.

59. Metra misinterpreted the rule 35 under the CBA to include the Family and Medical Leave Act (hereinafter, "FMLA").

**ANSWER:** Metra denies the allegations in paragraph 59 of Plaintiff's Second Amended Complaint.

60. Mr. Potts was improperly terminated for a second time-based on Rule 35 of the CBA without proper investigation.

**ANSWER:** Metra denies the allegations in paragraph 60 of Plaintiff's Second Amended Complaint.

61. Metra denied the union's request for Mr. Potts' reinstatement.

**ANSWER:** Metra denies the allegations in paragraph 61 of Plaintiff's Second Amended Complaint. Metra further states that paragraph 61 is vague and ambiguous insofar as it fails to identify the alleged request for reinstatement or the timeframe in which such request was purportedly made.

62. Contract Employees are allowed to have secondary employment at Metra.

**ANSWER:** Metra states that the allegations in paragraph 62 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

63. Mr. Potts is a Contract Employee.

**ANSWER:** Metra denies that Mr. Potts "is" a contract employee.

64. Mr. Potts' hearing was held for his second termination was on April 01, 2025.

**ANSWER:** Metra admits that a formal investigation was held on April 1, 2025. Metra denies any remaining allegations in paragraph 64 of Plaintiff's Second Amended Complaint.

65. Mr. Potts had a hearing for his alleged violation of Rules Nos. 1.6(4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, Effective April 1, 2020.

**ANSWER:** Metra admits that a formal investigation was held on April 1, 2025 concerning alleged violations of Rules Nos. 1.6 (4) and paragraph 1, and 1.9 of the General Code of Operating Rules, Eighth Edition, effective April 1, 2020. Metra denies any remaining allegations in paragraph 65 of Plaintiff's Second Amended Complaint.

66. The April 01, 2025, termination hearing was held while Mr. Potts was still incapacitated and under protest after postponement because Mr. Potts was still out on FMLA.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 as to whether Mr. Potts was "still incapacitated" and denies the allegations in paragraph 66.

67. Mr. Potts was not provided with the investigation report prior to the hearing and was provided with the investigation report during the hearing.

**ANSWER:** Metra denies the allegations in paragraph 67 of Plaintiff's Second Amended Complaint.

68. When Mr. Potts requested additional time for him and his union representative to review the over 300 pages provided as a result of the investigation, he was told he had an hour to review the documentation.

**ANSWER:** Metra denies the allegations in paragraph 68 of Plaintiff's Second Amended Complaint.

69. Mr. Potts was not provided with proper notice nor was he provided with a reasonable amount of time to prepare a defense.

**ANSWER:** Metra denies the allegations in paragraph 69 of Plaintiff's Second Amended Complaint.

70. Mr. Potts was not provided with the opportunity to cross-examine witnesses or present his own witnesses because he was not provided with ample time to prepare witnesses.

**ANSWER:** Metra denies the allegations in paragraph 70 of Plaintiff's Second Amended Complaint.

71. Mr. Potts did not have the full support of the union working on his behalf and it appears the union was working in conjunction with Metra to silence his grievances, complaints and concerns.

**ANSWER:** Metra denies the allegations in paragraph 71 of Plaintiff's Second Amended Complaint.

72. Milton Driver III (hereinafter, "Mr. Driver") SMART's TD Local Chairman and GCA committee member then told Mr. Potts that since he was already suing Metra, he could simply add this to his lawsuits and claims.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 and therefore denies.

73. Mr. Driver was the union representative assigned to Mr. Potts during his April 01, 2025, hearing.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 and therefore denies.

74. Mr. Potts noted that several key documents and information were missing from the investigation file that would prove he did not in fact commit fraud, even though he knew they received the information.

**ANSWER:** Metra denies the allegations in paragraph 74 of Plaintiff's Second Amended Complaint.

75. On April 09, 2025, Mr. Potts received notification that he was fired for a separate and distinct reason than his December 4, 2024, termination. Exhibit B.

**ANSWER:** Metra admits that Exhibit B purports to be a letter dated April 9, 2025 regarding discipline issued following a formal investigation held on April 1, 2025. Metra denies any remaining allegations in paragraph 75 of Plaintiff's Second Amended Complaint.

76. Mr. Potts requested that this termination be appealed as well.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 and therefore denies.

18

77. Mr. Potts called Mr. Driver on April 4, 2025 and May 30, 2025 requesting information and later on an appeal regarding the April 1, 2025 hearing and subsequent termination.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 and therefore denies.

78. On April 4, 2025, Mr. Driver texted Mr. Potts and stated that Mr. Potts should send his own letter to labor, HR, the board of directors and the discipline office and then an appeal can be filed. Exhibit D.

**ANSWER:** Metra admits that Exhibit D purports to contain a text message. Metra lacks knowledge or information sufficient to form a belief as to the truth of the underlying allegations and therefore denies.

79. Mr. Driver further stated that the General Chairman/International Vice President did not want the union to be involved in the lawsuit portion of Mr. Potts case.

**ANSWER:** Metra admits that Exhibit D purports to contain a text message. Metra lacks knowledge or information sufficient to form a belief as to the truth of the underlying allegations and therefore denies.

80. Mr. Driver never followed up with Mr. Potts to indicate an appeal was made on Mr. Potts' behalf after April 4, 2025.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 and therefore denies.

81. Mr. Potts was discriminated against and terminated on the basis of his race, and that he was an African American male.

**ANSWER:** Metra denies the allegations in paragraph 81 of Plaintiff's Second Amended Complaint.

82. Similarly situated non-African American employees were not terminated or removed from their positions and was treated more favorably as it pertained to the OEIG investigations and other disciplinary procedures implemented by Metra.

**ANSWER:** Metra denies the allegations in paragraph 82 of Plaintiff's Second Amended Complaint.

83. Mr. Potts termination is directly tied to his advocacy for fair treatment amongst African American train conductors including but not limited to highlighting wage discrimination and pay disparity among African American train conductors, the push for pay transparency and pay sheets, pushing against harsher disciplinary treatments that disproportionately affected the African American conductors.

**ANSWER:** The allegations contained in paragraph 83 related to claims related to the CBA and/or wage discrimination were previously dismissed by this Court (*See* ECF No. 72) and should be stricken. To the extent that the allegations of paragraph 83 are not stricken by the Court, Metra denies the allegations in paragraph 83 of Plaintiff's Second Amended Complaint.

84. Mr. Potts filed Charge No. 440-2025-12358 with the EEOC on September 26, 2025.

**ANSWER:** Metra admits that Plaintiff filed EEOC Charge No. 440-2025-12358. Metra denies that the charge was filed on September 26, 2025 and denies any remaining allegations in paragraph 84 of Plaintiff's Second Amended Complaint. Metra affirmatively states that EEOC Charge No. 440-2025-12358 was filed on November 4, 2025.

85. On November 25, 2025 Mr. Potts received his Right to Sue Letter. (Exhibit D).

**ANSWER:** Metra admits that Exhibit D purports to be a Notice of Right to Sue. The Notice speaks for itself. Metra lacks knowledge or information sufficient to form a belief as to the date Plaintiff received the Notice and therefore denies any remaining allegations.

86. There is a causal relationship between Mr. Potts disciplinary actions and his termination and his advocacy against unfair treatment and disproportionate disciplinary procedures against black employees.

**ANSWER:** Metra denies the allegations in paragraph 86 of Plaintiff's Second Amended Complaint.

87. Metra used Mr. Potts' alleged violations of secondary employment and employment while out on FMLA as a pretext to his firing.

**ANSWER:** Metra denies the allegations in paragraph 87 of Plaintiff's Second Amended Complaint.

88. Mr. Potts refused to participate or go along with unfair treatment, disparate wage inequalities based on race, and disparate disciplinary procedures based on race.

**ANSWER:** Metra denies the allegations in paragraph 88 of Plaintiff's Second Amended Complaint.

89. As a result of Metra's actions Mr. Potts suffered damage to his reputation and career, as well as loss wages.

**ANSWER:** Metra denies the allegations in paragraph 89 of Plaintiff's Second Amended Complaint.

90. As a result of Metra's actions, Mr. Potts is entitled to all legal and equitable remedies available to him.

**ANSWER:** Metra states that the allegations in paragraph 90 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

## COUNT II -TITLE VII-RETALIATION (METRA)

91. The Plaintiff re-alleges Paragraphs 1-90 and incorporates them by reference as fully stated herein.

**ANSWER:** As its answer to paragraph 91, Metra repeats and re-alleges its answers to the preceding paragraphs of this Second Amended Complaint, as if fully set forth herein.

92. Mr. Potts is an African American male.

**ANSWER:** Metra lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 and therefore denies.

93. Mr. Potts engaged in a protected activity.

21

**ANSWER:** Metra states that the allegations in paragraph 93 of Plaintiff's Second Amended Complaint state legal conclusions, not allegations of fact, for which no answer is required. To the extent an answer is required, Metra denies.

94. Mr. Potts was performing his job satisfactorily.

**ANSWER:** Metra denies the allegations in paragraph 94 of Plaintiff's Second Amended Complaint.

95. Mr. Potts was singled out for adverse employment actions that similarly situated employees who did not engage in protected activities did not suffer.

**ANSWER:** Metra denies the allegations in paragraph 95 of Plaintiff's Second Amended Complaint.

96. Mr. Potts contacted Metra's leadership several times complaining of the discriminatory practices he saw amongst Metra's train conductors. The discriminatory practices included but were not limited to unbalanced disciplinary procedures towards conductors of color that were not levied against similarly situated persons who were not black.

**ANSWER:** Metra denies the allegations in paragraph 96 of Plaintiff's Second Amended Complaint.

97. Mr. Potts assisted other Metra conductors in their disciplinary hearings and procedures, often highlighting the inconsistencies in the reprimand for Metra's black train conductors, opposed to other conductors and employees who are not of a protected class.

**ANSWER:** Metra denies the allegations in paragraph 97 of Plaintiff's Second Amended Complaint.

98. Mr. Potts suffered adverse material actions through the termination of his employment on December 4, 2024, and terminated for a second time again in April 2025.

**ANSWER:** Metra denies the allegations in paragraph 98 of Plaintiff's Second Amended Complaint.

99. Mr. Potts was a contract employee and was allowed to have other employment and was not in violation of any rules.

22

**ANSWER:** Metra denies the allegations in paragraph 99 of Plaintiff's Second Amended Complaint.

100. Mr. Potts was not provided with a hearing or an investigation for his December 4, 2024, termination.

**ANSWER:** Metra denies the allegations in paragraph 100 of Plaintiff's Second Amended Complaint.

101. On April 1, 2025, Plaintiff faced a second termination hearing while still on FMLA leave for the same continuing medical treatment and care, further demonstrating retaliatory actions taken by Defendants.

**ANSWER:** Metra admits that a formal investigation was held on April 1, 2025. Metra denies the remaining allegations in paragraph 101 of Plaintiff's Second Amended Complaint.

102. Mr. Potts was fired for a second time for a separate violation under the same premise and pretext of an alleged violation of Metra's rules.

**ANSWER:** Metra denies the allegations in paragraph 102 of Plaintiff's Second Amended Complaint.

103. As a result of Mr. Potts expressing his concerns and disapproval verbally and in writing and unwilling to participate in the unlawful disparate disciplinary treatment of African American train conductors, he was subjected to an investigation that resulted in his termination in violation of the Civil Rights Act of 1964.

**ANSWER:** Metra denies the allegations in paragraph 103 of Plaintiff's Second Amended Complaint.

104. As a result of Mr. Potts' verbal complaints regarding unlawful discriminatory practices Metra's leadership along with SMART blocked Mr. Potts from attending key meetings discussing disparate treatment, discriminatory practices, hostile work environments and low morale amongst employees.

**ANSWER:** Metra denies the allegations in paragraph 104 of Plaintiff's Second Amended Complaint.

105. Metra violated Mr. Potts' civil rights by inflicting targeted and adverse employment actions and investigations against him due to his highlighting safety violations and

23

concerns and refusing to participate in unlawful and unfair disciplinary treatment of people of a protected class.

**ANSWER:** Metra denies the allegations in paragraph 105 of Plaintiff's Second Amended.

106. Mr. Potts was retaliated against due to his refusal to participate in unlawful, discriminatory labor practices, disciplinary procedures levied heavily against the African American train conductors in a disproportionate amount compared to non-black train conductors.

**ANSWER:** Metra denies the allegations in paragraph 106 of Plaintiff's Second Amended Complaint.

107. Mr. Potts was not given the same procedures and courtesies while fighting his termination as his non-black counterparts in violation of Title VII.

**ANSWER:** Metra denies the allegations in paragraph 107 of Plaintiff's Second Amended Complaint.

108. Other similarly situated employees who were terminated for alleged dishonesty in violation of Metra's policies and procedures have since been reinstated and were treated more favorably.

**ANSWER:** Metra denies the allegations in paragraph 108 of Plaintiff's Second Amended Complaint.

109. Other similarly situated employees who were investigated under the premises for PPP loan fraud and in violation of Metra's policies and procedures and were not dismissed and/or terminated and were treated more favorably.

**ANSWER:** Metra denies the allegations in paragraph 109 of Plaintiff's Second Amended Complaint.

110. There is a causal connection between Mr. Potts' advocacy, reporting disciplinary concerns to HR, engaging in a protected activity and his termination.

**ANSWER:** Metra denies the allegations in paragraph 110 of Plaintiff's Second Amended Complaint.

111. As a result of the retaliation Mr. Potts suffered direct and proximate harm.

24

**ANSWER:** Metra denies the allegations in paragraph 111 of Plaintiff's Second Amended Complaint.

112. AS a result of Metra's actions Mr. Potts has received permanent health disability determinations as follows: in December 2025 (Veteran Affairs), in March 2026 (RRB), May 2026 (Prudential); and May 2026 (Social Security Administration).

**ANSWER:** Metra denies the allegation that "as a result of Metra's actions" Mr. Potts has received permanent health disability determinations and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112 and therefore denies.

113. As a result of Metra's actions, Mr. Potts is entitled to all legal and equitable remedies available to him.

**ANSWER:** Metra denies the allegations in paragraph 113 of Plaintiff's Second Amended Complaint. Metra further denies that Plaintiff is entitled to the relief sought within the prayer for relief following paragraph 113 or any relief at all.

## AFFIRMATIVE DEFENSES

**NOW COMES** Defendant, Metra incorporating its answers in full to the foregoing allegations of Plaintiff's Second Amended Complaint, and for its Affirmative Defenses to Plaintiff's Second Amended Complaint asserts further:

**FIRST AFFIRMATIVE DEFENSE:** As for its First Affirmative Defense, Metra states that Plaintiff's claims are barred in whole or in part, because the complaint fails to state a claim upon which relief may be granted pursuant to Title VII. For example, with regard to his race discrimination claim (Count I), Plaintiff fails to plead sufficient facts (and cannot prove): (1) that he was meeting his employer's expectations at the time of any alleged adverse action; (2) that similarly situated employees outside the protected class were treated more favorably; (3) or other circumstances that give rise to an inference that the alleged adverse actions were motivated by race. In other words, Plaintiff fails to plead sufficient facts (and cannot prove) that he suffered an

25

adverse action because of his race. With regard to his retaliation claim (Count II), Plaintiff fails to plead sufficient facts (and cannot prove): (1) that he engaged in protected activity and (2) that there is any alleged causal connection between any purported protected activity and the alleged adverse actions.

**SECOND AFFIRMATIVE DEFENSE**: To the extent Plaintiff's claims raise matters that are not within the scope of any charge he allegedly filed with the EEOC and/or corresponding state agency, Plaintiff failed to exhaust his remedies and as a result the Court lacks subject matter jurisdiction and such claims are barred.

**THIRD AFFIRMATIVE DEFENSE**: As for its Third Affirmative Defense, Metra states that any and all employment actions taken have no connection whatsoever to any alleged protected category, exercise of any alleged rights, nor to interfere with any alleged rights and that all decisions made with respect to Plaintiff's employment were made for legitimate business reasons unrelated to whether or not Plaintiff had or had not taken any actions or exercised any rights under Title VII and were undertaken in good faith and in compliance with all applicable laws.

**FOURTH AFFIRMATIVE DEFENSE**: As for its Fourth Affirmative Defense, Metra asserts that Plaintiff's claim for damages must be eliminated or reduced to the extent that he is, has been, or will be compensated from collateral sources including but not limited to short-term disability, long-term disability, compensation through the Veteran Affairs, the Railroad Retirement Board ("RRB"), Union benefits, and Social Security Administration benefits.

**FIFTH AFFIRMATIVE DEFENSE**: As for its Fifth Affirmative Defense, Metra states that, to the extent Plaintiff has failed to diligently seek other employment or otherwise mitigate his damages, his claims for damages are barred and/or reduced thereby.

**SIXTH AFFIRMATIVE DEFENSE**:     As for its Sixth Affirmative Defense, Metra states that Plaintiff's claims are barred to the extent they exceed the applicable statute of limitations under applicable law. To the extent Plaintiff relies upon allegations predating the actionable period, such allegations may not serve as independent bases for liability or recovery.

**SEVENTH AFFIRMATIVE DEFENSE**:   As and for the Seventh Affirmative Defense, Metra states Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to exhaust administrative prerequisites or other procedural conditions to the commencement of an action—and, as a result, the Court lacks subject matter jurisdiction. For example, Plaintiff failed to file a timely EEOC Charge to preserve his rights to bring a claim pursuant to Title VII. To the extent Plaintiff alleges he filed his EEOC charge on September 26, 2025, he fails to attach a copy of said EEOC Charge to the Second Amended Complaint.

**EIGHTH AFFIRMATIVE DEFENSE**:    As and for the Eighth Affirmative Defense, Metra asserts that at all times it acted in good faith in all particulars with regard to Plaintiff. Metra did not engage in any willful conduct, nor did it act in reckless disregard of Plaintiff's interests. Therefore, if Plaintiff were to prevail on any of his claims, he would not be entitled to any punitive or other damages.

Moreover, Metra states that Plaintiff failed to properly plead punitive damages under Title VII, under the standard set forth in *Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999). Thus, if Plaintiff were to prevail on any of his claims, he would not be entitled to any punitive or other damages.

**NINTH AFFIRMATIVE DEFENSE**:     As for its Ninth Affirmative Defense, Metra states that Plaintiff may not recover on any claim, theory, allegation, or alleged injury previously dismissed from this action by Court Order (ECF No. 72), including claims that are time-barred;

27

premised upon alleged wage discrimination, pay disparities, or related wage practices; claims related to whistleblowing and the tort of intentional infliction of emotional distress; and claims that are preempted by the Railway Labor Act including but not limited to claims based on the Collective Bargaining Agreement.

**TENTH AFFIRMATIVE DEFENSE**:    As for its Tenth Affirmative Defense, Metra states that in the event Plaintiff is otherwise entitled to an award of damages against Metra, that award must be barred or reduced if investigation uncovers wrongful conduct and money owed to Metra.

**ELEVENTH AFFIRMATIVE DEFENSE**:    As for its Eleventh Affirmative Defense, Metra states that Plaintiff's claim for damages including but not limited to compensation and benefits allegedly lost and alleged future losses as sought in Plaintiff's prayer for relief paragraph (b) is barred based on his admission that he is not able to perform the essential functions of his position, not qualified for, and not performing to the employer's expectations, based on an alleged disability.

**TWELFTH AFFIRMATIVE DEFENSE**:    As for its Twelfth Affirmative Defense, Metra states that, to the extent Plaintiff was on medical leave of absence and/or otherwise unable to work, his claims for damages are barred and/or reduced thereby.

**THIRTEENTH AFFIRMATIVE DEFENSE:**    As for its Thirteenth Affirmative Defense, Metra states that Plaintiff's purported damages are barred, in whole or in part, by the after-acquired evidence doctrine due to his misrepresentations.

**FOURTEENTH AFFIRMATIVE DEFENSE:**    As and for its Fourteenth Affirmative Defense, Metra asserts that to the extent Plaintiff establishes that it engaged in unlawful employment practices, Metra would have taken the same action against Plaintiff in the absence of

any impermissible motivating factor, and, therefore, Plaintiff cannot establish, among other elements, "but-for" causation, and Plaintiff's remedies are limited and precluded accordingly. Said another way, Metra asserts that to the extent Plaintiff alleges that Metra took any adverse actions against him, any and all employment actions taken with regard to Plaintiff were based solely on lawful and legitimate business reasons having no connection whatsoever to Plaintiff's race nor were any actions taken in retaliation. Therefore, Plaintiff cannot prevail on his claims.

**FIFTEENTH AFFIRMATIVE DEFENSE:** As and for its Fifteenth Affirmative Defense, Metra asserts that any and all allegations that violate the pleading standards of Federal Rule of Civil Procedure 8 should be stricken and/or disregarded.

**Defendant Metra reserves the right to amend and assert additional defenses that may arise as it obtains additional information throughout the discovery process.**

**WHEREFORE**, Defendant Metra respectfully requests this Court enter judgment in its favor and against Plaintiff, dismiss Plaintiff's Second Amended Complaint with prejudice, award Metra its costs and such other relief as this Court deems just and proper.

**Date**: July 6, 2026

Respectfully submitted,

**NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA**

By: */s/ Renée L. Koehler*
Renée L. Koehler
KOEHLER DINKEL LLC
900 S. Frontage Road, Suite 300
Woodridge, Illinois 60517
Phone: (630) 505-9939
Email: rkoehler@kdllclaw.com
**ATTORNEY FOR DEFENDANT**

29

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2026, she caused the foregoing

**DEFENDANT METRA'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S**

**SECOND AMENDED COMPLAINT** to be electronically filed with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following counsel of record:

Glori C. Bond
THE BOND LEGAL GROUP LLC
P.O. Box 39
Matteson, Illinois 60443
Phone: (708) 412-1536
Email: gbond@thebondlegalgroup.com

By: _Stephanie M. Dinkel_
Stephanie Dinkel, Esq.
KOEHLER DINKEL LLC
900 S. Frontage Rd., Suite 300
Woodridge, Illinois 60517
Telephone: (630) 505-9939

30